**Herman J. ATKINS, John J. Barker, Louis Bertani, et al., Plaintiffs,**

v.

**RAILROAD RETIREMENT BOARD, Defendant.**

**C.A. No. 84–5.**

Special Court,
Regional Rail Reorganization Act.

Feb. 12, 1987.

Louis Strassberg, New York City, for plaintiffs.

C. Max Vassanelli, U.S. Dept. of Justice, Washington, D.C., for defendant.

Before GASCH, Presiding Judge, and BRYANT and WEINER, JJ.

## MEMORANDUM

GASCH, Presiding Judge:

Plaintiffs appeal from the Railroad Retirement Board's decision to deny them

benefits under 45 U.S.C. § 797, Section 701 of the Regional Rail Reorganization Act of 1973 ("3R Act") as amended in 1981. The case comes before this Court on plaintiffs' motion for summary judgment and defendant's motion to dismiss, or in the alternative, for summary judgment. For the reasons stated below, the Court grants plaintiffs' motion for summary judgment.

## I. FACTS

Plaintiffs are two groups of employees of Pennsylvania Truck Lines ("PTL"), formerly a wholly-owned subsidiary of Penn Central, which since 1976 has been a wholly-owned subsidiary of the Consolidated Rail Corporation ("Conrail"). The first group of plaintiffs consists of 18 men who were employed by PTL for periods ranging from 9 to 29 years before being furloughed. The remaining six plaintiffs continue to be employed by PTL and have worked for that company for periods ranging from 12 to 18 years.

Prior to August 13, 1981, the 3R Act contained Title V, Section 501 *et seq.*, 45 U.S.C. § 771 *et seq.*, which provided for benefits to protect employees of railroads who were in jeopardy of losing their jobs due to the creation of Conrail. On that date, the 3R Act was amended by the Northeast Rail Service Act of 1981 ("NERSA"), section 1144(A)(1), which replaced Title V with a new Title VII of the 3R Act, 45 U.S.C. § 797 *et seq.*, also aimed at providing benefits for those left jobless by the creation of Conrail. Specifically, Section 701(a), 45 U.S.C. § 797(a)(1), provides in relevant part that

> The Secretary of Labor and the representatives of the various classes and crafts of employees of the Corporation [defined elsewhere as Conrail] shall, not later than 90 days after the effective date of this title, enter into an agreement *providing protection for employees of the Corporation who were protected by the compensatory provisions of title V* of this Act ... and who are, or may be, deprived of employment by actions taken

under this Act and the Northeast Rail Service Act of 1981. (Emphasis added.)

The statute goes on to define when an employee is considered "deprived of employment," and further provides that if the Secretary and the unions are unable to come to terms, the Secretary is to issue a benefits schedule. He did so on December 11, 1981. *See* Complaint, Exh. A.

The Benefits Schedule defines employee, with some exceptions not relevant here, as follows:

> (6) "Employee" means *an individual having an employment relationship with Conrail* or an acquiring railroad whose employment was governed by the terms of a collective bargaining agreement (including a furloughed employee), *and who was protected by the compensatory provisions of title V* of the 3R Act immediately prior to August 13, 1981.... (Emphasis added.)

Complaint, Exh. A, at 2–3.

The furloughed plaintiffs were covered under the repealed Title V benefits provisions and had unexpired coverage under that section at the time Title VII replaced it. They applied for continued benefits, specifically, a lump-sum separation allowance of $20,000 each as prescribed in Art. III of the Secretary's Benefits Schedule. A Supervisory Claims Specialist of the Railroad Retirement Board ("the Board") denied their applications on the ground that they did not have an "employment relationship" with Conrail and therefore did not satisfy the definition of employee contained in the Benefits Schedule. There is no dispute as to the appropriateness of their other qualifications for benefits. This decision was affirmed through all administrative appeals. An Appeals Referee of the Bureau of Hearings and Appeals within the Board finally determined that the furloughed employees were ineligible under Title VII because their "employer was Penn Truck Lines. [They were] not employee[s] of ConRail on September 1, 1981." *See* Complaint, Exh. B (decision of Appeals Referee).

Plaintiffs appealed to this Court, challenging the Board's conclusion that Title VII excluded displaced workers of a wholly-owned subsidiary of Conrail as beneficiaries. The furloughed employees seek a declaration that they are covered by the Act and ask the Court to direct the Board to pay them benefits. In the alternative, they ask the Court to declare the Act, as interpreted by the Board, unconstitutional. The active employees assert that they are covered by the Act because they may, at some time in the future, be deprived of employment as a result of actions taken under NERSA, *see* Section 701(a)(1), quoted *supra,* and therefore would be entitled to benefits but for the Board's interpretation of Title VII and the Benefits Schedule. They seek a declaratory judgment that they would be entitled to said benefits in the event they lose their jobs and otherwise qualify.

## II. JURISDICTION

This Court's jurisdiction is established by NERSA, Section 1152(a), 45 U.S.C. § 1105(a), which provides in relevant part:

Notwithstanding any other provision of law, the special court shall have original and exclusive jurisdiction over any civil action—

(1) for injunctive, *declaratory or other relief relating to the* enforcement, operation, execution, or *interpretation of any provision of or amendment made by this subtitle,* or administrative action taken thereunder to the extent that such action is subject to judicial review;

(2) challenging the constitutionality of any provision of or amendment made by this subtitle; ....

45 U.S.C. § 1105(a)(1–2) (emphasis added).

■ Despite the broad reach of this statute, defendant objects to this Court's jurisdiction. Defendant first asserts that this suit is barred by the doctrine of sovereign immunity, which holds that the United States may not be sued for money damages absent an express statutory waiver. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). This argument is wholly inapplicable here, where plaintiffs do not seek money damages as such, but rather benefits from a fund already created by Congress, and where the only issue is whether they are members of the class which Congress intended to benefit from the fund.

■ Plaintiffs challenge the Board's interpretation of NERSA and seek a declaratory judgment that they were covered by Title VII; and their complaint is thus clearly within the Court's jurisdiction under Section 1152(a)(1), *supra.* Defendant focuses on that phrase of Section 1152(a)(1) which states that it has jurisdiction over appeals from "administrative action taken [under NERSA] *to the extent such action is subject to judicial review."* Moreover, the Board's argument ignores the phrase before that, granting the Court the authority to hear a claim for relief relating to the interpretation of NERSA.

Defendant does not dispute that Section 1152(a)(2) grants the Court jurisdiction to hear plaintiffs' constitutional challenge to the Board's interpretation of Title VII but argues that the constitutional claims are groundless. This would seem to put the cart before the horse. The Court clearly has jurisdiction to hear a claim under NERSA based on the constitutionality of the statute. In sum, the Court has jurisdiction.[1]

## III. THE MERITS

■ The crux of the issue raised here is whether employees of a wholly-owned subsidiary of Conrail are entitled to benefits under Title VII of the 3R Act.

Defendant claims plaintiffs are not so entitled because in amending the Act by passage of NERSA, Congress left out a key phrase in its definition of who was

---

**1.** Because jurisdiction is established under Section 1152, it is unnecessary to consider defendant's remaining objections to jurisdiction.

entitled to benefits. Under the old provision, Section 501(2), an employee was defined as

a person who, on the effective date of a conveyance of rail properties of a railroad in reorganization to [Conrail] *or any subsidiary thereof,* [ ] has an employment relationship with either said railroad in reorganization *or any carrier* [ ] *which is leased, controlled, or operated by the railroad in reorganization*

. . . .

45 U.S.C. § 771(2) (repealed) (emphasis added).

However, Title VII, which replaced Title V in governing benefits for workers displaced by NERSA, did not refer to employees of Conrail subsidiaries. Rather, it referred to "employees of [Conrail] who were protected by the compensatory provisions of title V." *See* Section 701, 45 U.S.C. § 797(a)(1), quoted *supra,* Part I. The Secretary's Benefits Schedule further defines eligible employees as those who had "employment relationship[s]" with Conrail. Defendant Board has further limited the definition by excluding employees of, *inter alia,* "Pen Truck Lines" (sic). *See* Circular No. 121, Bureau of Unemployment and Sickness Insurance, June 6, 1983, Art. II 4 (as quoted in Complaint, Exh. B).

Defendant's own general counsel concedes that "[t]here is no indication as to any intent [on the part of Congress] to exclude or to include employees of Conrail subsidiaries, despite the change in language." Complaint, Exh. B (Memorandum of General Counsel Dale Zimmerman to Director of Unemployment and Sickness Insurance, Railroad Retirement Board, May 7, 1982). Furthermore, the Court notes that while the new act did not refer to subsidiaries of Conrail, it did include within its coverage employees of Conrail who were entitled to benefits under the old act. The parties do not dispute that plaintiffs would have been, and in the case of the furloughed employees, were, entitled to benefits under Title V. Thus it is not clear from either the language of the statute or the legislative history that Congress intended to exclude plaintiffs from coverage under Title VII.

In light of the foregoing, the Board's finding that employees of wholly-owned Conrail subsidiaries did not have an "employment relationship" with Conrail is irrational and arbitrary. The Board's treatment of employees of PTL under Section 701 is inconsistent with both current and historic practices of the Board. For example, the Board considers employees of Conrail's principal railroad operating subsidiary, as created in Section 301(b) of the 3R Act, to be covered by Title VII. Historically under Title V, the Board has considered employees of PTL as employees of Conrail under provisions other than the one at issue here, even where those provisions on their face spoke only of "the Corporation" (meaning Conrail) and not subsidiaries thereof.

For example, PTL employees were deemed to have rights under Section 507 of the 3R Act (repealed), which spoke only of "the Corporation" and dealt with employees' rights to submit a labor dispute arising under the Act to the Adjustment Board. Another more significant example was Section 509 of the 3R Act, (repealed), which required the employee seeking benefits under Title V to be paid by his employer, who would in turn be reimbursed out of a fund set up by the government and administered by the Board. Although that section speaks only of "the Corporation" (Conrail) and not its subsidiaries, the Board determined that employees of PTL entitled to Title V benefits were to be paid by PTL which in turn was reimbursed by the Board. Similarly, Section 506 of the old act, repealed but almost identical in wording to the new Section 707 of Title VII, required only "the Corporation" to rehire furloughed workers before contracting out excess work. Nonetheless, it was interpreted as applying to PTL, a subsidiary of Conrail, and under the new Section 707, PTL is still bound.

Defendant counters that the statute on its face refers only to employees of Conrail, and that it is wholly rational for the Board,

in interpreting a statute revised for the sole purpose of reducing Conrail-related expenditures, to conclude that certain classes of employees were no longer intended to receive benefits. While it is true that NERSA was passed in 1981 in an effort to reduce Conrail's operating losses so as to make it a more attractive purchase for a willing private buyer, defendant's argument sweeps too broadly. Congress was trying to save money, but that does not entail the conclusion that it intended to cut its costs by withdrawing benefits from heretofore covered employees of Conrail subsidiaries.

In attempting to reduce expenditures, the Board applied the Act to pay Title VII benefits to employees of the parent corporation but not to employees of its wholly-owned subsidiary. This is irrational when Title VII benefits are a replacement for the Title V benefits, which were received by employees of both classifications. When Congress amended the 3R Act sections governing benefits to workers displaced by the creation of Conrail, there was no indication that Congress intended to eliminate benefits for employees of Conrail subsidiaries but not for employees of Conrail itself. Furthermore, the language of the statute, defining "an employee" as one "having an employment relationship" with Conrail is broad enough to embrace employees of wholly-owned subsidiaries. The Secretary's Benefits Schedule simply tracks that language and does not necessarily exclude plaintiffs. The Board's interpretation would effect such exclusion, even though under other provisions and under historic practices of the Board, the terms "Conrail" or "the Corporation," when used in statutes governing other employee rights and benefits, were applied by the Board so as to include PTL and its employees. Absent direct evidence of congressional intent to modify the rights of employees of Conrail subsidiaries who may lose their jobs due to rail reorganization, and absent express statutory language to that effect, it was arbitrary for the Board to draw the line on benefits the way it did.

Accordingly, the Court finds it has jurisdiction to review the Board's interpretation of the statute under Section 1152(a)(1), rather than basing jurisdiction on APA review. Also, the Court finds the Board's interpretation is erroneous.

## IV. CONCLUSION

For the reasons stated above, the Court will deny defendant's motion to dismiss for want of jurisdiction and enter judgment granting plaintiffs the relief they seek. This result makes it unnecessary to consider plaintiffs' constitutional claims.