ESTATE OF Robert A. DUNAWAY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 405–88C.

United States Claims Court.

Nov. 2, 1989.

David Schachter, Mountain View, Cal., for plaintiff.

Marcia A. Lurensky, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## ORDER

MOODY R. TIDWELL, III, District Judge.

This case is presently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. RUSCC 12(b). The court will consider all of the allegations of the party opposing the motion as true.[1] *Mortensen v. First Fed. Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977). At this point in the proceedings, the court chooses not to consider matters outside the pleadings and convert this motion into one for summary judgement.

## FACTS

In 1970, Congress passed the King Range National Conservation Area Act "to establish ... the King Range National Conservation Area [King Range] in the State of California...." 16 U.S.C. § 460y (1982). In 1976, the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1711–1748 (1982), and its subsequent regulations, 43 C.F.R. § 2200.0–4 (1982), provided that the government, through the Bureau of Land Management (BLM), manage and "maintain on a continuing basis an inventory of all public lands and their resource and other values ..." in the King Range. 43 U.S.C. § 1711(a) (1982). Accordingly, the BLM surveyed the King Range by a timber cruise. This survey included the eighty acre area at issue in the present action, the Buckeye Mountain timber tract. The latest survey of this area was taken in 1980.

On September 29, 1981, under authority provided in FLPMA, the BLM entered into an agreement with the plaintiff and his then business partner, Robert C. McKee, to exchange publicly owned timber rights and lands located within Humboldt County, California with private lands owned by plaintiff in the King Range also located in Humboldt County, California. *See* 43 U.S.C. § 1716 (1982).[2] Included in the BLM land to be exchanged was the Buckeye Mountain timber tract. By federal law and regulation, the BLM was responsible for determining the fair market value of the land. 16 U.S.C. § 460y–4 (1982); 43 U.S.C. §§ 1713(d), 1716(b) (1982); 43 C.F.R. §§ 2200.0–4, 2201.3 (1982). The exchange agreement directed that the process to determine the fair market value would be done in two steps. The first step was the estimate of the volume of timber involved in the proposed exchange. The second, necessarily later, step was the valuation of that estimated volume. The BLM established the volume estimate by the 1980 timber cruise which provided the volume of timber to be estimated at 3,119 million board feet (MBF).

On July 15, 1982, an Addendum to the Exchange Agreement eliminated Mr. McKee as an applicant for the exchange and provided that an independent appraisal be done to establish the final valuation necessary for the deed exchange. This independent appraisal was to serve as the basis for the amount of consideration in the contract.

Pursuant to the exchange agreement, Western Timber Services, Inc., an indepen-

---

1. In considering the court's subject matter jurisdiction, the court is free to weigh other evidence necessary to determine jurisdiction. *Mortensen v. First Fed. Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977).

2. This is in accord with the earlier statutory provisions in the King Range Act. 16 U.S.C. § 460y–4 (1982).

dent appraiser, provided the valuation estimates. Western Timber based their appraisal on the 1980 timber cruise volume estimates provided by the BLM. One of the limiting conditions of Western Timber's appraisal was the assumption that no change in timber volume had taken place on the surveyed property since the 1980 timber cruise. Western Timber originally appraised the lands on July 13, 1982. At the BLM's request, Western Timber provided updates to this appraisal on October 15, 1982, and then again on December 21, 1982. These updates were subject to the same limiting conditions as the original appraisal.

The government's management of the entire area, including the Buckeye Mountain timber tract, necessarily included timber leases and contracts to cut and haul away timber. 16 U.S.C. § 460y–5 (1982). According to plaintiff's complaint, one of these contractors, Lyle Rock, trespassed on the Buckeye Mountain timber tract between the time of the survey and the time of transfer of the land to the plaintiff. The trespasser illegally removed approximately 400,000 board feet of timber worth approximately $46,000 in value at the time of discovery. Neither plaintiff nor defendants were aware at any time before the conveyance of this trespass.

On January 19, 1983, the Buckeye Mountain tract was conveyed to plaintiff by a grant deed.[3] Plaintiff, in consideration for the deed, and in accordance with the provisions of the King Range Act and FLPMA, made an equalization payment of $212,500. See 16 U.S.C. § 460y–4(3)(B) (1982); 43 U.S.C. §§ 1716–1718 (1982). Title to the Buckeye Mountain tract then passed to plaintiff from the United States upon recordation of the grant deed on February 25, 1983.

Plaintiff did not attempt to cut and remove any timber from the Buckeye Mountain tract until June, 1986. At that time, plaintiff discovered the trespass. On July 22, 1986, plaintiff informed the BLM by letter of the trespass. In that letter, plaintiff requested payment of $46,000 which he said represented the difference between estimated and actual harvest.

The BLM investigation which ensued found Lyle Rock to be liable for the trespass. However, after three demands were made of Mr. Rock's estate for payment, counsel for the Rock estate denied liability for the trespass. On January 20, 1988, BLM recommended that debt collection procedures be pursued against the estate of Mr. Rock.

In the interim, plaintiff filed a complaint with the BLM under the Federal Tort Claims Act in the amount of $50,000. This claim was denied by the Department of the Interior, BLM's parent agency, on August 13, 1987, on the grounds that the United States was not liable for damages resulting from the trespass.

On January 27, 1988, plaintiff filed a complaint in the United States District Court for the Northern District of California. The complaint set forth two causes of action: 1) breach of contract on the land and timber exchange for failure of obligation and 2) negligence in the government's duty to protect the land from trespass and/or to properly inspect the land before the exchange to insure the accuracy of the timber survey. On July 6, 1988, the case was transferred to the United States Claims Court on defendant's motion. The basis for the transfer was that the Claims Court had exclusive jurisdiction over the contract claim and that the Claims Court could also hear the tort claim since it arose out of the contract provisions.

Defendant has now moved for dismissal asserting that this court lacks jurisdiction and that plaintiff has failed to state a claim upon which relief can be granted. Defendant justified its motion by arguing that plaintiff's claim actually sounds in tort, not in contract, and therefore plaintiff's complaint is outside the jurisdiction of this court. A sole tort claim is not a claim upon which relief can be granted in the Claims Court. In addition, defendant argued that

**3.** Pursuant to statutory authority and provisions. 43 U.S.C. § 1718 (1976); 43 C.F.R. §§ 2200.1, 2200.3, 2200.5, 2201.1–.8 (1982).

the equitable relief of contract reformation requested by the plaintiff is a remedy outside the power of this court. Plaintiff responded by asserting that the Claims Court has subject matter jurisdiction based on the defendant's alleged breach of an express contract and the power to render judgement on plaintiff's claim for monetary damages against the defendant.

## DISCUSSION

In order to fully dispose of defendant's motion, the court needs to examine the issues independently. The court will first determine whether there is jurisdiction. This determination depends primarily on whether plaintiff has a breach of contract claim. The court will then turn to the plausible relief affordable by this court in relation to plaintiff's alleged failure to state a claim upon which relief can be granted.

### A. Subject Matter Jurisdiction

■ The court's threshold inquiry is to determine whether it has power to decide a case. Without that power, the court cannot afford any relief. *See Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565 (1877). This court's jurisdictional power is established by the Tucker Act, 28 U.S.C. §§ 1491–1509 (1982 & Supp. V 1988). The following criteria are required for the court to exercise its jurisdiction:

1) the claim must be against the United States;

2) the claim must be founded upon the Constitution, an act of congress, an executive departmental regulation, an express or implied contract with the United States, or for liquidated or unliquidated damages;

3) the claim must not sound in tort.

28 U.S.C. § 1491(a)(1) (1982). *See United States v. Testan*, 424 U.S. 392, 397–99, 96 S.Ct. 948, 952–54, 47 L.Ed.2d 114 (1976);

*Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599 (1967).[4] The Claims Court has exclusive jurisdiction over all contract claims against the United States where the claim is in excess of $10,-000. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1982). *See Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir.1987); *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963).

In the present action, the first two requirements can be dealt with summarily. Plaintiff's complaint is against the United States on the basis of a contract executed in 1983. On the face of the complaint, therefore, plaintiff's cause of action survives the first two Tucker Act requirements. Further, the complaint seeks money damages in the amount of $70,000. This suggests that the Claims Court has exclusive jurisdiction in that the amount of damages sought is in excess of $10,000.[5]

The third requirement, that the claim must not sound solely in tort, is somewhat problematic. The issue is confused in both plaintiff's complaint and defendant's answer. This confusion occurred because this action originated as a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1982). The claim was properly executed and denied under that act's provisions, 28 U.S.C. §§ 2672, 2674 (1982), and then brought to the United States District Court for the Northern District of California. 28 U.S.C. § 2675(a) (1982). When plaintiff filed suit in district court, he brought all claims he had against the United States as allowed by Rules 8(e)(2) and 18(a) of the Federal Rules of Civil Procedure. These claims included both the original tort claims begun under the FTCA plus an added claim alleging breach of contract. In support of both the tort and contract claims, plaintiff charged that the government breached its duty through negligent supervision of the timber cutting contracts

---

4. A further prerequisite is that plaintiff exhaust any and all possible or necessary administrative remedies before appearing in this forum. *See United States v. Testan*, 424 U.S. at 394 n. 2, 96 S.Ct. at 951 n. 2.

5. We note that if plaintiff's claim were not in contract, an extended analysis of the non-contractual claim must be done to ensure that the federal statute, regulation or Constitutional provision relied upon is cognizable in the Claims Court. *Amoco Prod. Co. v. Hodel*, 815 F.2d at 359.

on areas adjacent to the eighty acre Buckeye Mountain timber tract and/or negligent failure to discover or stop the trespass on the Buckeye Mountain timber tract by Lyle Rock. This negligence, plaintiff contended, resulted in misrepresentation of the actual volume of timber being sold causing plaintiff to pay more for the land than either party intended.

The court acknowledges that all of these allegations can be characterized as torts. *L'Enfant Plaza Properties, Inc. v. United States,* 645 F.2d 886, 891–92 (Ct.Cl.1981) (claims of fraud, misrepresentation and constructive fraud sound in tort). However, in construing the allegations in the light most favorable to the plaintiff, the non-moving party, the allegations can also be characterized as properly alleging a contractual breach of duty. This duty could arise under express contract provision or statutory provision incorporated into the contract, by misrepresentation of a material fact upon which plaintiff relied,[6] or mistake as to a material fact.[7] At this stage, however, the court need not determine whether defendant actually breached a contractual duty, only that a breach of contractual duty is a plausible construction of plaintiff's complaint. Because the court finds that a breach of a contractual duty is a plausible construction of plaintiff's complaint, plaintiff's complaint survives the third requirement for jurisdiction under the Tucker Act. Indeed, under this construction, and taking plaintiff's allegations as a whole, the court seems to have exclusive subject matter jurisdiction.

*B. Failure to State a Claim Upon Which Relief Can be Granted*

Though plaintiff's claims *may* sound in contract, defendant's second allegation that plaintiff has failed to state a claim upon which relief can be granted requires this court to further examine the gravamen of the cause of action. If defendant's alleged duty more properly sounds in tort than in contract, then the substantive right to money damages would be outside the jurisdiction of this court. *Id.; Eastport S.S. Corp.,* 372 F.2d at 1013. However, if defendant's alleged duty more properly sounds in contract than in tort, then the substantive right to money damages would properly be within the jurisdiction of this court. *L'Enfant Plaza,* 645 F.2d at 892.

■ "The Tucker Act ... is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan,* 424 U.S. at 398. It merely confers jurisdiction in the Claims Court when that substantive right already exists. *Id.* Therefore, as defendant correctly argues, a case sounding in tort is an action outside the jurisdiction of this court, and, accordingly, an action in tort states a claim upon which no relief can be granted by this court. "Repeatedly it has been held that under the Tucker Act ... this court lacks jurisdiction over a case sounding in tort regardless of how vicious or malicious the tort may be." *McCreery v. United States,* 161 Ct.Cl. 484, 488 (1963) (citations omitted).

In the present action, the claims lie in both tort and contract. Defendant argued that these claims against it (misrepresentation, negligent management of the land, and/or negligence in not protecting against the trespass) sound more properly in tort, and, therefore, this court cannot grant relief. Plaintiff responded by asserting that the claims against the defendant are so closely tied to the contractual relation between the parties that the action more properly sounds in contract, and, therefore, this court may grant relief on his claims. This court agrees with the interpretation of the Court of Appeals for the Ninth Circuit which stated:

[J]urisdiction of tort claims [against the United States] in the district court is "exclusive." (28 U.S.C. § 1346(b)).

---

6. Restatement (Second) of Contracts §§ 160, 162(2) (1981).

7. Restatement (Second) of Contracts §§ 151–155, 157, 158. Note that we do not address the assumption of risk issue in section 154 or how that section may be limited in its effect by section 157.

Read literally, this might have the effect of depriving the Court of Claims of jurisdiction of what are essentially contract cases wherever it is possible to fashion a "tort" out of a breach by the government of its contract. We think that no such result was intended.

We do not mean that no action will ever lie against the United States under the Tort Claims Act if a suit could be maintained for a breach of contract based upon the same facts. We only hold that where, as in this case, the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.

*Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir.1963).

█ Therefore, "[i]n a connected tort-contract claim, an action may be maintained in this court which '... arises *primarily* from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract' ... or from a tortious breach of contract." *Fort Sill Gardens v. United States*, 355 F.2d 636, 637–38, 174 Ct.Cl. 86 (1966) (quoting from *Chain Belt Co. v. United States*, 115 F.Supp. 701, 712, 127 Ct.Cl. 38 (1953)) (emphasis in original) (citations omitted). Reading the allegations in the light most favorable to the plaintiff, the court has already shown that there *may* be a contractual basis for plaintiff's claim. In light of *Woodbury* and *Fort Sill Gardens* the court now concludes that the issues and damages are contractual in nature rather than tort. Therefore, plaintiff has not failed to state a claim upon which relief can be granted by this court, and the court need not be troubled by plaintiff's claim for contract reformation. In pursuing his claims, plaintiff will now need to show that the contractual duty did in fact exist. To do this, plaintiff must demonstrate that the duty was expressed in the contract or within applicable statute, as well as showing that any alleged breach occurred before plaintiff was responsible for the land.

## CONCLUSION

Plaintiff's complaint sufficiently alleges claims primarily in contract, against the United States, and for a sum certain in money damages. Under the Tucker Act, therefore, this court has subject matter jurisdiction and plaintiff has not failed to state a claim upon which relief can be granted. Defendant's motion is denied.

IT IS SO ORDERED.