"This case comes before the court on defendant’s motion to dismiss for lack of jurisdiction and for failure to state a claim for which relief can be granted. Having considered the parties’ written submissions, the court, without oral argument, grants defendant’s motion.
"Plaintiff entered into a fixed-price contract on August 25, 1972, under which it agreed to construct 300 units of family housing for $5,838,164. It alleges that the termination of wage-price controls caused a steep increase in construction costs, so that plaintiff lost $911,342.65 as of December 31, 1975, by performing the contract. It is plaintiffs contention that the passage of the Small Business Emergency Relief Act, Pub. L. 94-190, 89 Stat. 1095 (1975), entitled it to be reimbursed by the Government for the losses suffered. Such a claim was made to the contracting officer on the construction contract. He denied the claim on June 28, 1976. This determination was *947 affirmed by the Acting Division Engineer of the Army Corps of Engineers on September 24, 1975. Five days later, this suit was filed.
"No provision in the contract conferred upon plaintiff any entitlement to relief for expenses exceeding the fixed price stated in the contract.[1] No constitutional obligation creates such entitlement either. Therefore, plaintiff can establish jurisdiction only if the statute, expressly or by fair implication, creates an entitlement to monetary relief. See United States v. Testan, 424 U.S. 392 (1976); Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967). We find no evidence that the statute creates any entitlement to monetary relief.
"The legislation invoked by plaintiff was enacted 'to provide relief to small business concerns which have fixed-price Government contracts in cases where such concerns have suffered or can be expected to suffer serious financial loss because of significant and unavoidable difficulties during performance because of the energy crisis or rapid and unexpected escalations of contract costs.’ Sec. 2, Pub. L. 94-190. Plaintiff, arguing that the legislation was designed to apply to situations just like the one in which it found itself, contends the law required that it be given assistance in the amount of its contract losses. Two flaws, each fatal in itself, mar plaintiffs analysis.
"First, the Act does not authorize monetary awards to every contractor whose performance has been more expensive than the agreed contract price. Instead, the Act authorizes only limited remedies under specific circumstances. Subsection 4(a) allows agency heads, upon the application of small business concerns, to terminate contracts for the convenience of the Government upon certain findings. Subsection 4(c) provides for the extension of performance timetables necessitated by shortages of *948 energy supplies. Only subsection 4(b) even permits, much less requires, the payment of moneys beyond amounts specified by contract. It authorizes agency heads to modify terms of certain contracts. But the benefits of subsection 4(b), like those of subsection 4(c), are limited to contractors who request termination for the convenience of the Government, and they may only be attained where the contract modification complies with guidelines from the Office of Federal Procurement Policy. Those guidelines direct that relief be 'limited to those small business firms whose overall financial position is so poor that their ability to survive, without relief under the Act, is in question.’ The determination by the Acting Division Engineer that plaintiff did not meet this standard has not been challenged here.
"Even if the Act contemplated monetary relief in situations such as plaintiffs, a second hurdle would block plaintiffs path to recovery. That is, whatever relief the Act authorizes is permissive, not mandatory. Being a small business with the problems sought to be remedied by the Act does not suffice to establish entitlement to relief. Instead, the statute and its legislative history make it clear that no relief, other than extension of contract timetables, can be had without a prior determination by the head of an agency that such relief is appropriate. In short, the relief contemplated by the Act is discretionary with the agency. This is evident from the language of the statute itself which provides that 'the head of * * * [an] agency may modify the terms of the contract * * V Subsec. 4(b). [Emphasis süpplied.] The plain meaning of this language is made wholly unambiguous by the alternative language chosen in subsection 4(c), which provides that where energy shortages cause delay in the performance of a contract 'the head of * * * [an] agency, or his designee, shall provide by modification to the contract for an appropriate extension * * *.’ [Emphasis supplied.]
"The legislative history of the Act reinforces our conclusion that the choice to leave monetary relief discretionary with the agency was deliberate. The House Report explaining the bill stated: 'Legislation is needed to enable the Government agencies to grant relief at their *949 discretion to eligible small business fixed-price contractors.’ [Emphasis supplied.] H. Rep. No. 94-154, 94th Cong., 1st Sess., 1975 U.S. Code Cong. & Ad. News 2198. The Report continued: 'The bill would not require that the executive agency provide any relief but would merely authorize the head of the agency to either terminate the contract for the convenience of the Government without cost to the contractor or to modify the terms of a fixed-price contract, i.e., to grant a price increase * * *.’ [Emphasis supplied.] Id. at 2199. This legislative history reinforces the unambiguous language of the statute, leaving no doubt that a small business concern has no entitlement to monetary relief of the sort required to establish jurisdiction under the Eastport and Testan cases, cited above. The only conceivable grounds for a contrary decision in view of the foregoing would be a showing that the contracting officer’s determination was illegal because it was arbitrary or capricious or in violation of some applicable statute or regulation. Plaintiff has pleaded nothing to show that is the situation here.
"Plaintiff thus does not have a claim for monetary relief within this court’s jurisdiction and fails to state a claim on which relief can be granted.
"it is therefore ordered and concluded that defendant’s motion to dismiss the claim for lack of jurisdiction is granted, and plaintiffs petition is dismissed.”
Plaintiffs request for rehearing was denied January 13, 1978. On April 24, 1978 plaintiff filed a petition for a writ of certiorari.

 Plaintiffs claim for reformation, revision, and modification of the contract lacks merit. Plaintiff argues that the parties did not intend that plaintiff would lose money on the contract. Yet no reason has been advanced why the court should ignore the fixed-price nature of the contract, which clearly evidences a mutual intent that the risk of increasing expenses should be borne by the contractor. As in Tony Downs Foods Co. v. United States, 209 Ct. Cl. 31, 42, 530 F.2d 367, 373 (1976), plaintiffs 'mistaken judgment as to economic conditions, and the continued existence of the price freeze, [is] a mistake for which relief cannot be granted.’