In this civilian pay case, plaintiff, by his attorney, claims "lost” pay and allowances for, and reinstatement into "the *813 position for which he was employed.” He alleges that defendant agreed, on or about December 1, 1979 to employ him as a civilian commissary officer for the Hellenikon Air Force Base (Hellenikon) in Athens, Greece, and that, pursuant to the "employment agreement” he and his family prepared to move (from Izmir, Turkey) to Athens, and actually did so.
Subsequent to filing its answer denying the claims, defendant filed a motion for summary judgment, to which plaintiff has not responded. The case is decided without hearing oral argument.
The official documents and affidavit attached thereto, none of which are contested by plaintiff, disclose the following pertinent facts:
Plaintiff was the commissary officer, employed by Boeing Services International (BSI) on a contract basis, in Izmir, Turkey. During 1978 and 1979 he had conversations with Horst R. Kelly, the civilian personnel officer at a United States Air Force installation (TUSLOG Det. 118) in Izmir, about the possibilities for Excepted Civil Service employment in the commissary career field. Plaintiff was furnished application forms which he submitted to the Air Force in February 1979. On or about November 20, 1979, Headquarters, USAFE, notified Hellenikon by telecon that plaintiff "has been tentatively selected for the position of Commissary Officer GS-1144-11 at Hellenikon AB”; and that "upon receipt of letter to follow” Hellenikon should contact plaintiff and begin processing the necessary employment agreement forms, arranging for transportation, etc.
On or about November 21, 1979, TUSLOG Det. 118 notified headquarters that "Mr. Paul accepts subject position; however, wants written confirmation of selection prior to his giving notice to present employer.” The telecon was retransmitted with the addition, "This MSG constitutes written notice of your selection.” Subsequently, plaintiff received the letter referred to, confirming that he had been "tentatively selected” and stating the position salary and other details. The final paragraph of this letter stated:
*814 The Air Force cannot assume any obligation for any premature action on your part. Therefore, you should not resign your position, dispose of your home, sell your possessions, or take any action that will affect your present position in the event your commitment is not finalized. You will be notified by the Civilian Personnel Office when your commitment is final.
About a week and a half before plaintiffs scheduled departure from Izmir to Athens, the Turkish National Police investigated plaintiff for certain alleged violations of Turkish law, some of which violations were admitted by plaintiff. Nevertheless, Kelly received instructions to continue processing plaintiff, but the oath was not to be administered until the morning of plaintiffs departure by plane on February 1, 1980. Plaintiff was advised of this on January 30,1980, and was told by Kelly that he would have to be given the oath of office before he could become an employee of the United States Government. In the meantime, he had been terminated for cause by BSI on January 29.1980.
On January 31,1980, Kelly received a telephone call and, later the same day, a confirming message instructing him not to administer the oath but to hold the same in abeyance, and Kelly informed plaintiff of this development. On February 27,1980, plaintiff, then in Athens, addressed a note to the Personnel Management Section, Hellenikon, asking the status of the matter. On March 10, 1980, that section was notified that investigation by the Air Force in Izmir on February 20-21, 1980, "substantiated that sufficient statements admitting wrong doing had been made by Mr. Paul to finalize his nonselection for employment with the Air Force.” This information was forwarded to plaintiff on April 2, 1980. He filed his petition in this court on June 4.1980.
In summary, it is clear that the "written confirmation” alleged by plaintiff to be contained in the TWX transmission was merely confirmation of his tentative selection, and not an employment agreement. Furthermore, plaintiff was advised by letter immediately following his tentative selection that the Air Force assumed no obligation for any action by plaintiff "in the event your commitment is not final *815 ized.” Additionally, the oath of office was never administered to plaintiff.
It is a fact that defendant refused to administer the oath to plaintiff at the eleventh hour, after having continued the processing of plaintiffs employment documents. However, any inconvenience to plaintiff was caused by the timing of the Turkish investigation of plaintiffs actions and cannot be attributed to defendant. The alleged illegal activities did not come to defendant’s attention prior to the tentative selection and the processing of plaintiffs papers. Defendant had no obligation, in the circumstances, to administer the oath of office to plaintiff, and in fact the oath was never administered. Plaintiff was never given notice that his selection was final, and he never entered on duty in the position claimed.
No appointment to a position with the Federal Government is final until the last act required by the person or body vested with the appointment power is performed. Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803); Goutos v. United States, 212 Ct. Cl. 95, 552 F.2d 922 (1976). Plaintiff, having never been administered the oath and having not entered upon duty, has never been appointed to the position in question. This court is without jurisdiction to award any of the benefits of a position to which the plaintiff was never duly appointed. United States v. Testan, 424 U.S. 392 (1976).
it is therefore ordered that defendant’s motion for summary judgment is granted and the petition is dismissed.