In this case an Indian tribe alleges that the United States breached a lease with the tribe and also violated its fiduciary duties to the tribe. The defendant has moved to dismiss the petition. We deny the motion with respect to the claim of breach of the lease, but grant it with respect to the other claims.
In Count One of the petition, the plaintiff asserts that the Bureau of Indian Affairs in 1970 leased 10,000 square feet of temporary office space from the tribe for $12,000 per year, but that the Bureau breached its contract by failing to pay pursuant to the lease. The eight other counts of the petition allege the existence and breach by the Government of a trust relationship with the Fort Belknap Indian Communmity.
The essence of these eight counts is that the government allowed the plaintiff to enter into certain unfortunate business agreements with third parties, regarding a construction project on the Fort Belknap Indian Reservation; that as a result of those agreements, the Fort Belknap Indian Community and its wholly owned subsidiary, Fort Belknap Builders, Inc., suffered financial losses and other damages; and that the government’s failure to protect the Fort Belknap Indian Community from entering into the *872 allegedly unconscionable agreements was a breach of the government’s fiduciary obligations to the tribe, for which the tribe may recover damages.
1. The government concedes that Count One states a cause of action for breach of contract that is within our jurisdiction under 28 U.S.C. §1491 (Supp. IV 1980) over contract claims against the United States. The Government argues, however, that our six-year statute of limitations bars this claim. See 28 U.S.C. § 2501 (1976). The agreement upon which the plaintiff bases this claim was executed in 1970 and the present suit was not filed until 1981. We are unwilling to dismiss this count, however, because the plaintiff may be able to show that the government’s alleged breach was a continuing one.
2. The government seeks dismissal of the plaintiffs remaining eight counts on the ground that in these counts the plaintiff has failed to state a claim within the jurisdiction of this court. We agree.
For us to have jurisdiction over such claims there must be an alleged violation of federal statutes that "confer a substantive right to recover money damages from the United States . . . .” United States v. Testan, 424 U.S. 392, 398 (1976). Moreover, a statute creates a substantive right to money damages only if it " 'can be fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.’” Id. at 400, quoting Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 607, 372 F.2d 1002, 1009 (1967). The jurisdictional requirements enunciated in Testan apply equally to Indian claims. United States v. Mitchell, 445 U.S. 535 (1980). There the Supreme Court stated that tribal as well as individual claimants "must look beyond the jurisdictional statute for a waiver of sovereign immunity with respect to their claims.” Id. at 538.
In the present case the plaintiff contends that the government’s alleged fiduciary duty stems from a statute. The issue before us, therefore, is whether plaintiff has alleged the existence of a substantive right to money damages based on a statute that mandates compensation. As we recently stated, "although 'the substantive right to money’ need not be explicitly stated in the substantive legislation itself, . . . Congress’s waiver of sovereign immu *873 nity with respect to money compensation must be clear or strong before the court can say that the statute mandates compensation,” Inupiat Community v. United States, 230 Ct.Cl. 647, 680 F.2d 122, cert. denied, 459 U.S. 969 (1982) (quoting Mitchell v. United States, 229 Ct. Cl. 1, 664 F.2d 265, 268-69 (1981) (Mitchell II), affirmed and remanded, June 27, 1983.
The plaintiff relies upon 25 U.S.C. §81 (1976), which provides in part:
No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:
First. Such agreement shall be in writing, and a duplicate of it delivered to each party.
Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it... .
This provision does not mandate the payment of money if the United States approves Indian contracts that prove to be unwise or improvident. The statute was designed to protect Indians by subjecting their contracts with third persons to the prior examination and approval of the Secretary of the Interior and the Commissioner of Indian Affairs. See H.R. Rep. No. 2449, 85th Cong., 2d Sess.l, reprinted in 1958 U.S. Code Cong. & Ad. News 3961. However, a Congressional intent to protect Indians falls far short of the "clear or strong” {Inupiat, supra) Congressional intent required to create a fiduciary duty by the United States to oversee and manage a tribe’s contractual relations, for the breach of which the United States must respond in damages.
*874 In Mitchell, the Supreme Court concluded that despite language in the General Allotment Act (25 U.S.C. § 348) that the United States is to hold allotted land "in trust for the sole use and benefit of the Indian,” the Act "cannot be read as establishing that the United States has a fiduciary responsibility for management of allotted forest lands.” Id. at 546. The statute now before us falls far short of imposing a fiduciary obligation upon the United States that would make the government liable for losses Indians may suffer as the result of their contracts with third parties that the government approved. Cf. Hydaburg Coop. Ass’n v. United States, 229 Ct. Cl. 250, 667 F.2d 64, 69 (1981), cert. denied, 459 U.S. 905 (1982). ("It is a far different matter, however, given the broad view of sovereign immunity we must take under Mitchell, supra, and its predecessors, to conclude that Congress intended the United States to be liable as a fiduciary for the promotion, maintenance, and management of assets and enterprises acquired by the Indians pursuant to the Act.”).
The defendant’s motion to dismiss with respect to Count One is denied, and that count is remanded to the trial division for further proceedings. The defendant’s motion to dismiss with respect to Counts Two through Nine is granted, and those counts are dismissed.
Plaintiffs’ petition for a writ of certiorari was denied, February 22,1983.