954 F.2d 733
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Jose Rudolfo Alvarado GUEVARA, Luis Miguel Dominguez
Mendoza, Elido Escobar, Jose Dennis Flores Medrano, Juan
Francisco Garcia Perez, Carlos Eduardo Gonzalez Cruz,
Virgilio Tapia Rodas, Henry Vasquez Cruz, Encarnacion
Calderon Valdizon, Carlos Humberto Compos Ortiz, Hector
Najarco Alas, Cristobal Osorio Machado, Edwin Perez Valle,
Jose Daniel Sullivan Lopez, Jose Vergara Hernandez, and Luis
Arturo Zelaya Martinez, Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE (INS); John
Luvender, individually and as Director of the Port Isabel
Service Processing Center; Omar Sewell, individually and as
District Director of Defendant INS; Edwin Meese,
individually and as Attorney General of the United States,
Defendants-Appellees.
 No. 90-1476.
 United States Court of Appeals, Federal Circuit.
 Jan. 6, 1992.
 
 Before RICH, PLAGER and CLEVENGER, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Appellants, aliens who are being or have been detained by the Immigration and Naturalization Service (INS or Government), appeal the order of the District Court for the Southern District of Texas dismissing appellants' suit, No. B-86-106 (entered April 11, 1989). These pretrial detainees (the detainees) worked voluntarily during their detention at the Port Isabel Service Processing Center (Processing Center), for which they were paid $1 per day. The detainees sued the INS and related officials for minimum wage payment under the Fair Labor Standards Act. We affirm the district court's decision dismissing the action.
 
 DISCUSSION
 I.
 
 2
 The Port Isabel Processing Center at Brownsville, Texas, utilizes the voluntary labor of its detainees to perform such tasks as grounds maintenance, cooking, laundry, cleaning and other services. The detainees are paid $1 per day for their work. The detainees filed suit challenging the legality of the Government's practice of paying the working detainees only $1 per day, arguing that voluntarily working detainees must be paid in accordance with the minimum wage requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (1988) (FLSA). The Government filed a motion to dismiss the cause of action pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that the detainees are not covered by the FLSA.
 
 
 3
 The district court granted the motion and dismissed the case. The court concluded that, for several reasons, these plaintiffs are not covered by the FLSA. For one, the detainees are not "employees" within the meaning of that term as it is used in the Act. The court held that "an employee under the FLSA is one who finds employment in the business of others out of economic necessity," citing Donovan v. Tehco, Inc., 642 F.2d 141 (5th Cir.1981). "[The detainees] are both confined and provided for in the [Processing Center]. Because they volunteer and do not seek employment out of any economic necessity, [they] are not employees within the meaning of the FLSA."
 
 
 4
 The district court also was of the view that it was not within the legislative purposes of the FLSA to protect those in plaintiffs' position. As the court explained,
 
 
 5
 it would not be within the legislative purpose of the FLSA to protect those in [Detainees'] situation. The Congressional motive for enacting the FLSA, found in the declaration of policy at 29 U.S.C. § 202(a), was to protect the 'standard of living' and 'general well-being' of the worker in American industry. Because they are detainees removed from American industry, [they] are not within the group that Congress sought to protect in enacting the FLSA. (Citation omitted.)
 
 
 6
 The district court further cited in support of its conclusion several cases in which prison inmates were held not covered by the FLSA on similar reasoning.
 
 II.
 
 7
 We agree with Judge Hinojosa's conclusion that the FLSA was not intended by Congress to cover the circumstances presented by plaintiffs in this case. In addition, there is a further reason why the Government defendants are entitled to a dismissal. The appellants have not pleaded any basis for their entitlement to the status of federal employees for purposes of the FLSA.
 
 
 8
 Absent proper appointment, an individual cannot claim the benefits and entitlements that accompany federal employment. A person who is not authorized to appoint, or who, having authorization, in fact does not appoint, cannot bestow the status of federal employee upon another, and thus obligate the United States to payment of funds not authorized and appropriated by the Congress for that purpose. See United States v. Testan, 424 U.S. 392, 402 (1976) ("The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." (citations omitted)).
 
 
 9
 To determine who qualifies as a federal government employee for various pay and benefit purposes the Congress has enacted detailed legislation establishing various categories of employees. For example, Chapter 5, U.S.C., defines categories that include appointive positions in the executive, judicial, and legislative branches of the government of the United States, except positions in the uniformed services. 5 U.S.C. § 2101(1).
 
 
 10
 Whatever the category, an individual is not considered to be a federal government employee until he or she has been properly appointed as an employee of the Government. For the executive agencies in particular, of which INS is one, this invariably requires completion of extensive paperwork mandated by the Office of Personnel Management and executed by an official authorized to appoint persons to the position involved.
 
 
 11
 In this case, payment of $1 per day to the detainees did not constitute their appointment by proper authority to positions in the federal service. As a consequence, the federal government as an employer was never in the position of having to pay wages to these detainees as federal employees under the FLSA. Thus questions raised by plaintiffs on appeal of the scope of employer/employee definitions under the Act, and the proper interpretation of the so-called 'economic reality' test for distinguishing employees from independent contractors, are beside the point.
 
 
 12
 Congress was not unaware of the situation in which these detainees might find themselves, or of the practice of the INS in asking for volunteers to undertake work projects at the detention centers. In 8 U.S.C. § 1555 Congress specifically provided that "[a]ppropriations now or hereafter provided for the [INS] shall be available for ... (d) payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved ) to aliens, while held in custody under the immigration laws, for work performed...." (Emphasis supplied.) The appropriation acts provide for the $1 per day wage. See, e.g., Departments of State, Justice, and Commerce, The Judiciary, and Related Agencies Appropriation Act, 1978, Pub.L. No. 95-86, 91 Stat. 419, 426 (1977).
 
 
 13
 Plaintiffs claim that because of their alienage they are being discriminated against in violation of the Due Process Clause of the Fifth Amendment. There is no unconstitutional discrimination. This is not a case in which the Congress provided one wage level for federal employees generally, and another wage level for those employees who are aliens. The aliens in this case are not federal employees; the wage level paid to federal employees is thus irrelevant. The Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor. The wage level is a matter of legislative discretion. There is no constitutional impediment to the Congressional scheme.