# In the United States Court of Federal Claims

No. 19-1205

Filed: September 24, 2019

Reissued: September 30, 2019[1]

| | |
|---|---|
| PAE-PARSONS GLOBAL LOGISTICS SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FLUOR INTERCONTINENTAL, INC., <br><br> Defendant-Intervenor. | Motion to Dismiss; RCFC 12(b)(1); RCFC 12(b)(6); Federal Acquisition Streamlining Act of 1994; Standing; Jurisdiction; Interested Party; Indefinite-Delivery Indefinite-Quantity Contract; Task Order. |

*Anuj Vohra*, Crowell & Moring LLP, Washington, DC, for plaintiff.

*William Porter Rayel*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Andrew Emil Shipley*, Wilmer Cutler, et al., LLP, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

***SMITH*, Senior Judge**

This case presents a fact pattern not seen by the Court before. Here the government has merged an indefinite-delivery indefinite-quantity ("IDIQ") contract and a task order into one process. Plaintiff, PAE-Parsons Global Logistics Services, LLC ("P2GLS"), challenges the ratings it received from the Department of the Army's ("Agency" or "Army") as part of the IDIQ technical evaluation. Those ratings directly resulted in plaintiff's failure to receive both a specific IDIQ contract and its related task order. The government argues that the Federal Acquisition Streamlining Act of 1994 ("FASA") bars any court relief. However, if the Court were to accept that, an agency would be beyond judicial scrutiny in every circumstance in which

---

[1]     An unredacted version of this opinion was issued under seal on September 24, 2019. The parties were given an opportunity to propose redactions, but no such proposals were made.

the government simultaneously awards an IDIQ contract and a task order. It is clear that FASA's purpose is not to bar review of potentially all bid protests. This could happen if the government's reading of FASA were accepted. Here plaintiff is not complaining about the task order but the underlying technical evaluations in the award process. The plaintiff was directly harmed by this process because the technical ratings had immediate economic consequences. The government argues that, as plaintiff received one of the IDIQ contracts and was not a disappointed bidder—despite the clear flaws in the procurement process—plaintiff lacks standing to bring this protest. To argue otherwise is to use words without form or substance. Functionally, the government created four separate IDIQ contracts. If plaintiff later succeeds on the merits, the flawed technical evaluations directly resulted in Fluor receiving a contract for which P2GLS is better qualified.

This action is before the Court on defendant's Motion to Dismiss. Plaintiff challenges Army's decision to award IDIQ contract to defendant-intervenor, Fluor Intercontinental, Inc. ("Fluor"), under Request for Proposal No. W52P1J-16-R-0001 ("RFP" or "Solicitation"). On August 21, 2019, defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), alleging that (1) P2GLS's protest is barred by the FASA, and (2) P2GLS is not an "interested party" under 28 U.S.C. § 1491(b) and therefore lacks standing to challenge the IDIQ contract award to Fluor. *See generally* Defendant's Motion to Dismiss (hereinafter "Def.'s MTD"). For the following reasons, the Court denies defendant's Motion to Dismiss.

## I.      Background

On November 20, 2017, the Army issued a solicitation for the Logistics Civil Augmentation Program ("LOGCAP") V contract for logistics support services. Def.'s MTD at 4. The Solicitation provided that the Army would issue a minimum of four and up to six IDIQ contract awards to cover the six Geographic Combatant Commands ("COCOMs") and Afghanistan, as well as seven concurrently awarded task orders. *Id*. Specifically, the RFP indicated that the Army would award a "[b]asic IDIQ and associated Task Order(s)" to the offeror that provided the best value for each COCOM. PAE-Parsons Global Logistics Services, LLC's Response to Defendant's Motion to Dismiss (hereinafter "Pl.'s Resp.") at 6 (citing RFP § M.7).

The Army issued LOGCAP V awards on a best value basis according to the following factors: (1) Technical/Management; (2) Past Performance; (3) Small Business Participation; and (4) Cost/Price. Def.'s MTD at 5 (citing RFP § M.5). The Army conducted separate best value determinations for each COCOM and for Afghanistan. *Id.* The RFP further directed that the Army would select the successful offeror for each COCOM in descending order according to three "Operational Priority Groupings." Pl.'s Resp. at 6 (citing RFP § L.10.1(a)). Operational Priority Grouping 1 included the European Command ("EUCOM") and Pacific Command ("PACOM") regions. *Id.* (citing RFP § L.10.1(a)). Operational Priority Grouping 2 included the Central Command ("CENTCOM"), Northern Command ("NORTHCOM"), African Command ("AFRICOM"), and Southern Command ("SOUTHCOM") regions. *Id.* (citing RFP § L.10.1(a)). Operational Priority Grouping 3 covered the Afghanistan region. *Id.* (citing RFP § L.10.1(a)). Offerors were only eligible for one COCOM award in any Operational Priority Grouping. *Id.*

(citing RFP § L.10.1(a)). The RFP provided that the Afghanistan region was to be awarded solely through a task order, and it could only be awarded to an IDIQ awardee that had already received a higher-priority COCOM. RFP § M.7. The LOGCAP V IDIQ awards were made in order of descending priority based on which offeror was determined to provide the best value for a particular COCOM region. Def.'s MTD at 5 (citing RFP § M.7). Each IDIQ award included different monetary values and provided awardees with different rights to specific task orders. Pl.'s Resp. at 7.

In April of 2019, the Army awarded four IDIQ contracts and the associated task orders. Def.'s MTD at 6. In addition to its LOGCAP V IDIQ contract awards, Fluor received the AFRICOM task order, and P2GLS received the SOUTHCOM task order. *Id.* at 7. In May of 2019, P2GLS, in addition to three other LOGCAP V offerors, filed a protest with the Government Accountability Office ("GAO") challenging the Army's award of the AFRICOM task order to Fluor. Pl.'s Resp. at 9. On July 31, 2019, the GAO denied a separate protest filed by Dyncorp International, LLC ("Dyncorp"), and on August 5, 2019—mere days before the GAO would have issued a decision in P2GLS's protest—Dyncorp filed a protest with this Court. *Id.* As a result, the GAO denied P2GLS's protest as academic. *Id.*

Plaintiff filed its Complaint with this Court on August 14, 2019. *See generally* Complaint. Defendant filed its Motion to Dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) on August 21, 2019. *See generally* Def.'s MTD. Plaintiff filed its Response to defendant's Motion to Dismiss on August 28, 2019. *See generally* Pl.'s Resp. Defendant filed its Reply in support of its Motion to Dismiss on September 4, 2019. *See generally* Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (hereinafter "Def.'s Reply"). Oral Argument was held on September 9, 2019, and defendant's Motion to Dismiss is fully briefed and ripe for review.

## II.    Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2018). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

The Tucker Act also grants this Court jurisdiction over bid protest actions. 28 U.S.C. § 1491(b). Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires that the bid protest be brought by an "interested party." A protestor is an "interested party" if it is an actual or prospective bidder that possesses the requisite direct economic interest. *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United*

3

*States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract." *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996).

## III.   Discussion

In this procurement, the Agency made a single contemporaneous award of the LOGCAP V IDIQ contracts and their associated task orders. Pl.'s Resp. at 6 (citing RFP § M.7). If FASA applies, the Court has no jurisdiction to review the protest. The government argues that if FASA does not apply, plaintiffs who receive awards of lesser value in lower-priority regions lack standing to bring a protest because they do not meet the disappointed bidder requirement. In effect, the Agency created a system in which the plaintiffs are left without any judicial recourse or remedy. For the following reasons, the Court does not understand FASA to bar the Court's jurisdiction under the circumstances surrounding this case.

### A.  Jurisdiction

In its Motion to Dismiss, the government argues that P2GLS's protest is barred by FASA because the protest is "'in connection with' the proposed issuance of the AFRICOM task order to Fluor." Def.'s MTD at 9. On its face, the government's argument seems correct. FASA explicitly divests this Court of jurisdiction over protests of task orders. 41 U.S.C. § 4106(f). FASA states, in relevant part, the following:

> (f) Protests.–
>
> (1) Protests not authorized.–A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for:
>
>> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
>>
>> (B) a protest of an order in excess of $10,000,000.[2]
>
> (2) Jurisdiction over protests.–Notwithstanding section 3556 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

*Id.* This Court has extended this FASA jurisdictional bar to include task order protests of corrective action that "relates to, and is connected with, the issuance of a task order." *Mission*

---

[2]   Section 835 of the 2017 National Defense Authorization Act increased this threshold to $25,000,000 for task orders issued by the Department of Defense, NASA, or the Coast Guard. The change has been codified at FAR 16.505(a)(10), but FASA has not been amended.

*Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 179 (2014); *see also Nexagen Networks, Inc. v. United States*, 124 Fed. Cl. 645, 653 (2015).

Plaintiff argues that it is not protesting the award of the AFRICOM task orders, but rather it is protesting the AFRICOM IDIQ contract award, and, as such, FASA does not bar this protest. Pl.'s Resp. at 12. Classifying the protest as against the "AFRICOM IDIQ," rather than referring to it as the LOGCAP V IDIQ associated with the AFRICOM task order, is somewhat confusing. Such an argument highlights the connection between the IDIQ contract and task order awards, seemingly cementing the applicability of the FASA bar. Despite that confusion, the Court agrees with plaintiff's underlying contention that FASA does not apply under the specific circumstances of this protest.

Pursuant to the RFP, the Agency made LOGCAP V IDIQ contract awards in order of descending COCOM priority, and each offeror who received a regional award was ineligible for any lower-priority awards within that same Occupational Priority Grouping. *Cf.* RFP § M.7. Thus, the order in which an offeror was slotted to receive its IDIQ contract award was directly based on its technical ratings and also directly impacted the task orders for which it would then become eligible. *Id.* Moreover, the Agency made *separate* best value determinations and "assign[ed] a separate adjectival rating" to each offeror for each COCOM and for Afghanistan. *Id.* The Agency issued all four IDIQ awards simultaneously. However, the manner in which the Agency determined which offeror would receive each award—in descending order of priority, with separate best value determinations and adjectival ratings for each COCOM—clearly indicates that the Army functionally issued four *separate and distinct* LOGCAP V IDIQ contract awards. The fact that task orders resulted from those IDIQ awards does not divest this Court of its jurisdiction over the IDIQ contract awards themselves, as the task order awards are inextricably linked to the ratings for the IDIQ contract.

## B. Standing

In addition to its argument that FASA divests the Court of its jurisdiction over P2GLS's protest, the government also contends that plaintiff lacks standing to protest the LOGCAP V award because an awardee is not an interested party. Def.'s MTD at 16. In making this argument, the government posits that "the legislative history of 28 U.S.C. § 1491(b)(1) indicates that Congress intended that only 'disappointed bidders' would be able to bring post-award bid protests in this Court." Def.'s MTD at 17 (citing *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("[T]he legislative history of § 1491(b)(1) suggests that congress intended standing under the statute to be limited to disappointed bidders.")). The Court does not agree with the government's interpretation of 28 U.S.C. § 1491(b)(1) in the context of this case.

In order to establish standing in bid protest actions, a protester must be an interested party. 28 U.S.C. § 1491(b)(1). An "interested party" is an actual or prospective bidder with a direct economic interest in the solicitation. *Weeks Marine*, 575 F.3d at 1361. In a post-award bid protest, a plaintiff "must show that it had a 'substantial chance' of receiving the contract" in order to prove a direct economic interest. *Sys. Appl. & Techs. Inc.*, 691 F.3d at 1381 (citing *Rex. Serv. Corp.*, 448 F.3d at 1307). P2GLS is an actual bidder with a substantial chance of receiving

the contract because it actually bid on the LOGCAP V Solicitation, and it was one of the six offerors that were included in the competitive range and participated in multiple rounds of discussions. *See* Source Selection Decision at 4.

Of note, this Court has previously held that "status as a contract awardee does not by itself deprive this court of bid protest jurisdiction." *Nat'l Air Cargo Grp., Inc. v. United States*, 126 Fed. Cl. 281, 295 (2016); *see also*, *cf. Sys. Appl. & Techs. Inc.*, 691 F.3d at 1381–82. Moreover, this Court has also held that "a protestor that won an IDIQ contract had standing to challenge the government's award of another IDIQ contract under the same solicitation to different offeror." *Nat'l Air Cargo Grp, Inc.*, 126 Fed. Cl. at 296 (citing *Glenn Defense Marine (ASIA) PTE, Ltd. v. United States*, 97 Fed. Cl. 311, 317 n. 3 (2011), *appeal on other grounds dismissed as moot after government settled with plaintiff,* 469 Fed.Appx. 865 (2012)). Essentially, an awardee still has an "economic interest" in "stopping the government from stepping outside stated procurement terms in making further awards." *Id.* at 294 (citing *Magnum Opus Techs., Inc. v. United States*, 94 Fed Cl. 512, 530 (2010)). In keeping with the prior relevant decisions of this Court, P2GLS retains its standing despite the fact that it received a LOGCAP V IDIQ contract award.

Even if this Court were to determine that a successful awardee lacks standing to protest another offeror's inclusion in an IDIQ pool, P2GLS would still have standing to bring this protest. The nature of this Solicitation essentially resulted in four concurrently awarded—but very different—IDIQ contracts. As eligibility for each specific LOGCAP V IDIQ contract was predicated on an offeror's success or failure to receive a higher-priority LOGCAP V IDIQ contract, plaintiff is clearly a disappointed bidder with regard to the specific IDIQ contract at issue here. While P2GLS unquestionably received *a* LOGCAP V award, it did not receive the LOGCAP V award that served as the mandatory prerequisite to receive the AFRICOM task order. As the Agency performed a separate best value determination for each COCOM—and as the task orders were so intrinsically linked to the IDIQ awards as to be nearly indistinguishable from the IDIQ contract awards themselves—the IDIQ contract associated with the SOUTHCOM task orders was clearly a different IDIQ contract than that which was associated with the AFRICOM task order. Therefore, plaintiff clearly has standing as a disappointed bidder with regard to the IDIQ contract award at issue in this case.

## IV.    Conclusion

FASA undoubtedly bars this Court's review of ordinary task order award decisions. However, FASA does not divest this Court of its jurisdiction under the unique circumstances surrounding P2GLS's protest. However, review of IDIQ contract awards, regardless of the issuance of subsequent or concurrent task orders, clearly falls within the jurisdictional purview of the Court of Federal Claims. Therefore, this Court will hear the merits of P2GLS's protest insofar as they are based on the limited circumstances surrounding the Army's evaluation of LOGCAP V IDIQ contract awards. The Court does not look to the merits of the AFRICOM task order award, but only to the evaluation process surrounding plaintiff's bid.

For the reasons set forth above, defendant's MOTION to Dismiss is **DENIED**. A Status Conference will be set in the coming days, setting forth a proposed procedural schedule.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge