MAYER, Circuit Judge,
dissenting.
After today’s opinion, it is difficult to envision a case in which a fiduciary obligation would not lie. Because I do not believe the statutes and regulations at issue establish a fiduciary obligation of the government, I dissent. The Tucker Act gives the Court of Federal Claims jurisdiction over broad categories of claims against the United States and constitutes a waiver of sovereign immunity. 28 U.S.C. § 1491 (1994); United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) (Mitchell II). However, it “‘does not create any substantive right enforceable against the United States for money damages.’ ” Mitchell II, 463 U.S. at 216, 103 S.Ct. at 2967 (quoting United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). Thus, to invoke the jurisdiction of the Court of Federal Claims, appellants must point to “some other source of law, such as ‘the Constitution, or any Act of Congress, or any regulation of an executive department,’ ” id. at 216, 103 S.Ct. at 2967 (citing 28 U.S.C. § 1491), that imposes an obligation on the United States. The claimant must also demonstrate that the source of substantive law “can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.” Id. at 216-17, 103 S.Ct. at 2968 (internal quotations omitted). The substantive law mandating compensation may be either express or implied, but it must be unambiguous. Id. at 217 n. 16, 103 S.Ct. at 2968 n. 16.
Appellants do not point to an explicit source of law as a basis for their claim. Rather, they assert an implicit fiduciary relationship with the United States stemming from the Indian land leasing requirements of 25 U.S.C. § 415(a) (1994) and the related regulations at 25 C.F.R. Part 162. They argue that pursuant to these provisions the government controlled their lease or had a duty to manage the lease and was thus acting in a fiduciary capacity. They further allege that the government breached its implied fiduciary duty when it failed to exercise the supervision necessary to prevent Pima Inn from underreporting its business profits and when it failed to timely cancel the lease.
The threshold question is whether “the statutes and regulations at issue ... clearly establish fiduciary obligations of the Government in the management and operation of Indian lands.” Mitchell II, 463 U.S. at 226, 103 S.Ct. at 2972. Answering whether the government has incurred fiduciary obligations requires evaluating the nature and extent of its involvement in the leasing arrangements.
By 25 U.S.C. § 415(a) the Secretary of the Interior merely has the power to review and evaluate proposed leases to determine whether they should be allowed in light of the proposed use of the land, its relationship to neighboring land, the effect on the environment, the safety of proposed structures, and the availability of police and fire services and judicial forums. I agree with the trial court that the factors which section 415(a) directs the Secretary to consider “seem more in the nature of zoning, safety, or environmental concerns which are traditional general welfare concerns of government when acting in a non-fiduciary capacity.” Brown v. United States, 32 Fed.Cl. 509, 516 (1994).
Appellants contend that the Secretary’s authority under section 415(a) amounts to elaborate control over all terms and conditions of a lease and that they are essentially powerless. I see the relationship quite differently. Absent proof to the contrary, we must assume the Secretary does not exercise his power in an arbitrary manner or require frivolous and unfair provisions in leases subject to approval. See Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed.Cir.1993) (presumption that public officers perform their-duties correctly, fairly, in good faith, and in accordance with the law and governing regulations, stands unless there is irrefragable proof to the contrary.) Additionally, as discussed below, the regulations developed pursuant to section 415(a) do not dominate every aspect of lease negotiations and do not address routine management responsibility under the lease. Accordingly, the Secretary’s role is simply to prescribe prudent minimum provisions for leases which protect the allot-tees, the local community, and the federal government. This authority, when exercised in good faith, is not tantamount to elaborate *1565 control. The general oversight of section 415(a) cannot fairly be interpreted as creating fiduciary duties under which the government might be required to compensate appellants for the damage caused by their lessee.
The regulations, set out at 25 C.F.R. Part 162, outline the control and management responsibilities of the Secretary in greater detail. But the detail only serves to highlight that the pinnacle of the Secretary’s management and control is in setting standard conditions for leases to ensure that neither the allottees nor the government enter into an improvident agreement. The Secretary has additional duties when lease violations are called to his attention or when transfer of a lease is desired, but there is no suggestion in the regulations that he monitor a lessee’s compliance with the lease or take any other active management role. The regulations do not give the Secretary pervasive management responsibility or control over the lease any more than the statute does.
25 C.F.R. § 162.5 enumerates the terms for leases of land having a trust status: they must be in a form approved by the Secretary and are subject to his written approval; absent special conditions, the Secretary may not approve leases at less than the present fair annual rental; a surety bond and insurance on the property is normally required; leases may not provide a right of preference for future leases; they must specify whether payments are to be made directly to the owners or to the BIA; and the leases must specify that the obligations run to both the allottees, as the holders of the beneficial interest in the land, and to the United States, as trustee. Additionally, under section 162.8, the Secretary will only approve leases for a duration that will allow the highest economic return to the owner consistent with prudent management and conservation practices, and under section 162.9 the lease must provide that all improvements of the leased land will either be removed or will become property of the allottees. These terms are not exhaustive and they leave much room for discretion by the allottees m their negotiation of lease requirements. The Secretary does not negotiate leases for legally competent adult Indian allottees, assist them in advertising their property, or actually grant their lease. Compare 25 C.F.R. § 162.6 & 162.7.[1]
After a lease is in force, the Secretary’s power is limited to approving changes to the lease or in resolving disputes over performance: the Secretary must approve subleases or encumbrances on the leasehold interest, id. .§ 162.12; when an allottee makes a satisfactory showing of a violation of the lease or the leasing regulations, the Secretary may cancel the lease after giving the lessee an opportunity to respond to the allegation of violation, id. § 162.14. Monitoring a lessee’s compliance with the lease is left to the allot-tees. If they discover a problem with the lease or the lessee, only then may the Secretary participate through negotiation, arbitration, or by canceling the lease. Id. But he has no ongoing management responsibility.
Appellants argue that the allotment leasing provisions are similar in scope and detail to the Indian land right-of-way provisions[2] in which the Supreme Court has implied fiduciary duties. Mitchell II, 463 U.S. at 223, 103 S.Ct. at 2971. Based on this asserted similarity, they argue that the government has likewise incurred fiduciary duties here.
These two schemes are totally dissimilar. Under the leasing provisions, 25 U.S.C. § 415(a) and 25 C.F.R. Part 162, the Secretary merely approves leases desired and negotiated by other parties. The leasing provisions ensure that the lease terms will at least protect the interests of both the allottee and the government and will ensure that the lease is compatible with the general welfare of the community and the environment. The allottee negotiates and grants the lease, 25 C.F.R. § 162.3, and the Secretary approves it. In stark contrast, the Secretary is affirmatively empowered “to grant rights-of-way” under 25 U.S.C. § 323. In some circumstances approval by a competent adult allot- *1566 tee is not even required before the Secretary-may grant the right-of-way.[3] And the Secretary can negotiate rights-of-way with commercial interests. See, e.g., Coast Indian Community v. United States, 213 Ct.Cl. 129, 550 F.2d 639, 642 (1977). Since the allottees cannot disapprove the Secretary’s decision to grant a right-of-way in many instances, their recourse is to hold the government answerable for compensation. The Secretary’s authority in that situation is thus different in kind not merely in degree from the lease situation. In fact, it is just the opposite of that under the leasing provisions where power resides in the allottees with only oversight power vested in the Secretary. A competent adult allottee is never forced to enter into a leasing agreement by the Secretary.
In Mitchell II the Supreme Court considered the right-of-way provisions in light of allegations of government mismanagement of Indian land and timber resources under several statutes and regulations.[4] Although the Court addressed the right-of-way sections separately, 463 U.S. at 223, 225 n. 29, 103 S.Ct. at 2971, 2972 n. 29, it read them together with the other timber and land control statutes and regulations at issue which resulted in fiduciary duties because of the Secretary’s pervasive control over every aspect of the management of forests on Indian lands — including construction of roads to facilitate timber operations. See Mitchell v. United States, 229 Ct.Cl. 1, 664 F.2d 265, 273 (1981). To the same effect was Pawnee v. United States, 830 F.2d 187, 189 (Fed.Cir. 1987), which found jurisdiction, but no liability, based on an amalgamation of the Indian Long-Term Leasing Act, 25 U.S.C. § 396 (1988), the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. §§ 1701-57 (1988), and assorted regulations. But the Secretary’s management and control under those statutory arrangements was thorough; it was nearly passive here.

. The Secretary has greater management power and control on behalf of persons non compos mentis, orphaned minors, and undetermined heirs. 25 C.F.R. § 162.2. Appellants do not fall within those categories.

. 25 U.S.C. §§ 323-325 (1982); 25 C.F.R. Part 169.

. 25 U.S.C. § 324 provides that the Secretary-may grant rights-of-way without the consent of individual Indian owners if: 1) the owners are so numerous that it would be impracticable to obtain their consent and the grant will cause no substantial injury to the land or any owner; 2) the land is owned by more than one person and the majority consents to the grant; 3) the whereabouts of the owner are unknown, and the owner of any interests therein whose whereabouts are known, or a majority thereof, consent to the grant; or 4) the heirs or devisees of a deceased owner of the land or an interest therein have not been determined and the Secretary of the Interi- or finds that the grant will not cause substantial injury to the land or any owner.

. The provisions included "timber management statutes, 25 U.S.C. §§ 406-07, 466, federal statutes governing road building and rights of way, §§318 and 323-325, statutes governing Indian funds and Government fees, §§ 162a and 413,- and regulations promulgated under these statutes.” Mitchell II, 463 U.S. at 211, 103 S.Ct. at 2965; see also, United States v. Mitchell, 445 U.S. 535, 537 n. 1, 100 S.Ct. 1349, 1351 n. 1, 63 L.Ed.2d 607 (1980).