UNITED STATES *v.* TESTAN ET AL.

No. 74–753.  Argued November 12, 1975—Decided March 2, 1976

BLACKMUN, J., delivered the opinion of the Court, in which all Members joined except STEVENS, J., who took no part in the consideration or decision of the case.

*John P. Rupp* argued the cause for the United States. With him on the briefs were *Solicitor General Bork, Assistant Attorney General Lee, Acting Assistant Attorney General Jaffe,* and *Ronald R. Glancz.*

*Edwin J. McDermott* argued the cause and filed a brief for respondents.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This is a suit for reclassification of federal civil service positions and for backpay. It presents a substantial issue concerning the jurisdiction of the Court of Claims and the relief available in that tribunal.

I

The plaintiff-respondents, Herman R. Testan and Francis L. Zarrilli, are trial attorneys employed in the Office of Counsel, Defense Personnel Support Center, Defense Supply Agency, in Philadelphia. They represent the Government in certain matters that come before the Armed Services Board of Contract Appeals of the Department of Defense. Their positions are subject to the Classification Act, 5 U. S. C. § 5101 *et seq.,* and they are presently classified at civil service grade GS–13.

In December 1969 respondents, through their Chief Attorney, requested their employing agency to reclassify their positions to grade GS–14. The asserted ground was that their duties and responsibilities met the requirements for the higher grade under standards promulgated

---

*Robert N. Sayler,* filed a brief for Melvin Allison et al. as *amici curiae* urging affirmance.

by the Civil Service Commission in General Attorney
Series GS–905–0. In addition, they contended that their
duties were identical to those of other trial attorneys in
positions classified as GS–14 in the Contract Appeals
Division, Office of the Staff Judge Advocate, Head-
quarters, Air Force Logistics Command, Wright-Patter-
son Air Force Base, Dayton, Ohio, and that under the
principle of "equal pay for substantially equal work,"
prescribed in § 5101 (1)(A),[1] they were entitled to the
higher classification.

The agency, after an audit by a position classification
specialist, concluded that the respondents' assigned duties
were properly classified at the GS–13 level under the
Commission's classification standards. On appeal, the
Commission reached the same conclusion and denied re-
classification. The Commission also ruled that compari-
son of the positions held by the respondents with those
of attorneys employed by the referenced Logistics Com-
mand was not a proper method of classification.

The two respondents then instituted this suit in the
Court of Claims.[2] Each sought an order directing re-
classification of his position as of the date (May 8, 1970)
of the first administrative denial of his request, and back-
pay, computed at the difference between his salary and
grade GS–14 (and the claimed appropriate within-grade
step), from that date. The trial judge, in a long opinion,
App. 43–117, concluded that the respondents were not

---

[1] Title 5, § 5101. "Purpose.

"It is the purpose of this chapter to provide a plan for classifica-
tion of positions whereby—

"(1) in determining the rate of basic pay which an employee
will receive—

"(A) the principle of equal pay for substantially equal work will
be followed . . . ."

[2] There is no suggestion that the plaintiff-respondents have not
properly pursued and exhausted their administrative remedies.

entitled to backpay due to their allegedly wrongful classification. *Id.*, at 57. But he also concluded that the Commission's refusal to reclassify respondents to GS–14 was arbitrary, discriminatory, and not supported by substantial evidence, *ibid.*, and that as a matter of law the respondents were entitled to an order remanding the case to the Commission with directions so to reclassify the respondents. *Id.*, at 58, 117.

The Court of Claims considered the case en banc and divided 4–3. The majority disapproved the trial judge's recommendation that the court was empowered to direct the reclassification of respondents to GS–14, for the Court of Claims is not authorized to create an entitlement to a governmental position. "If entitlement depends on the exercise of discretion by someone else we cannot substitute our own discretion." 205 Ct. Cl. 330, 332, 499 F. 2d 690, 691 (1974). The majority felt, however, that if the Commission were to determine that it had made an erroneous classification, that determination "could create a legal right which we could then enforce by a money judgment." *Id.*, at 333, 499 F. 2d, at 691.

The majority agreed with the trial judge that the Commission's failure to compare respondents' positions with those of the Logistics Command attorneys was arbitrary and capricious. *Id.*, at 331, 499 F. 2d, at 691. The court observed: "Ordinarily . . . it is not arbitrary and capricious to refuse to consider the grade of employees other than the ones complaining." But it went on to say: "This case is peculiar in its facts," for the employees "all belong to a small readily manageable cadre, their jobs have a large nexus of duties shared in common, and the other employees are specifically pointed out by the complaining employees." *Id.*, at 332, 499 F. 2d, at 691. The court ruled that it had the power under the remand statute, 86 Stat. 652, now codified as part of 28 U. S. C.

§ 1491 (1970 ed., Supp. IV), to order the Commission to reconsider its classification decision "under proper directions." Accordingly, and pursuant to its Rule 149 (b), the court remanded the case to the Commission to make the comparison and to report the result to the court.[3]

The dissent argued that the jurisdiction of the Court of Claims is limited to money judgments and, since none had been or could be ordered in this case, the court was without jurisdiction even to remand the case to the Civil Service Commission. In addition, the respondents had not stated a claim upon which relief could be granted, for they were asking for positions, and pay, to which they had never been appointed. The dissent further argued that there is no constitutional right to a governmental position to which one has not been appointed; that the salary of a Government job is payable only to the person appointed to that position; and that the court has no authority to take over the appointing power that the Constitution, Art. II, § 2, has placed in the Executive Department. It asserted that the decision of the majority was but a declaratory judgment, a legal function not within the court's jurisdiction. Finally, the dissent argued that the classification decision of the Commission was neither arbitrary nor capricious and was supported by substantial evidence. 205 Ct. Cl., at 334–338, 499 F. 2d, at 692–694.

---

[3] The decision of the Court of Claims in this case is not inconsistent, as to these issues, with other recent cases resolved by divided votes in that court. See *Chambers* v. *United States,* 196 Ct. Cl. 186, 451 F. 2d 1045 (1971); *Allison* v. *United States,* 196 Ct. Cl. 263, 451 F. 2d 1035 (1971); *Small* v. *United States,* 200 Ct. Cl. 11, 470 F. 2d 1020 (1972); *Pettit* v. *United States,* 203 Ct. Cl. 207, 488 F. 2d 1026 (1973). But see *Applegate* v. *United States,* 207 Ct. Cl. 999, 521 F. 2d 1406 (1975); *Roseman* v. *United States,* 207 Ct. Cl. 998, 521 F. 2d 1406 (1975); *Kaeserman* v. *United States,* 207 Ct. Cl. 983 (1975); *Barnum* v. *United States,* 207 Ct. Cl. 1024, 529 F. 2d 531 (1975).

We granted certiorari because of the importance of the issue in the measure of the Court of Claims' statutory jurisdiction, and because of the significance of the court's decision upon the Commission's administration of the civil service classification system. 420 U. S. 923 (1975).

## II

We turn to the respective statutes that are advanced as support for the action taken by the Court of Claims.

A. The Tucker Act. The central provision establishing the jurisdiction of the court is that part of the Tucker Act now codified as 28 U. S. C. § 1491:

> "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." [4]

This Court recently had occasion to examine the jurisdiction of the Court of Claims under this statutory formulation. In *United States* v. *King,* 395 U. S. 1 (1969), the Court reviewed a decision (182 Ct. Cl. 631, 390 F. 2d 894) in which the Court of Claims had concluded that it was empowered to exercise jurisdiction under the Declaratory Judgment Act, 28 U. S. C. § 2201. This Court observed that the Court of Claims was established by Congress in 1855; that "[t]hroughout its entire history," until the *King* case was filed, "its jurisdiction has been limited to money claims against the

---

[4] Title 28 U. S. C. § 1494 also grants the Court of Claims jurisdiction to determine the amount due from the United States "by reason of any unsettled account of any officer . . . of . . . the United States."

United States Government"; that decided cases in this Court had "reaffirmed this view of the limited jurisdiction of the Court of Claims," and "the passage of the Tucker Act in 1887 had not expanded that jurisdiction to equitable matters"; that "neither the Act creating the Court of Claims nor any amendment to it" granted that court jurisdiction of the case before it because King's claim was "not limited to actual, presently due money damages from the United States"; and that what King was requesting was "essentially equitable relief of a kind that the Court of Claims has held throughout its history . . . it does not have the power to grant." 395 U. S., at 2–3. The Court then went on to hold that the Declaratory Judgment Act did not grant the Court of Claims authority to issue declaratory judgments. Cited in support of all this were *Glidden Co.* v. *Zdanok,* 370 U. S. 530, 557 (1962) (Harlan, J.) (plurality opinion); *United States* v. *Jones,* 131 U. S. 1 (1889); and *United States* v. *Alire,* 6 Wall. 573, 575 (1868). See *Lee* v. *Thornton,* 420 U. S. 139 (1975); *Richardson* v. *Morris,* 409 U. S. 464 (1973); *United States* v. *Sherwood,* 312 U. S. 584, 589–591 (1941).

The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists. *Eastport S. S. Corp.* v. *United States,* 178 Ct. Cl. 599, 605–607, 372 F. 2d 1002, 1007–1009 (1967). We therefore must determine whether the two other federal statutes that are invoked by the respondents confer a substantive right to recover money damages from the United States for the period of their allegedly wrongful civil service classifications.

B. The Classification Act. Inasmuch as the trial judge

proposed, App. 57, that the respondents were not entitled to backpay under the Back Pay Act, 5 U. S. C. § 5596, and the Court of Claims held that there was no need for it to reach and construe that Act, 205 Ct. Cl., at 333, 499 F. 2d, at 691, it is implicit in the court's decision in favor of respondents that a violation of the Classification Act gives rise to a claim for money damages for pay lost by reason of the allegedly wrongful classifications.

It long has been established, of course, that the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States* v. *Sherwood,* 312 U. S., at 586. And it has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States* v. *King,* 395 U. S., at 4; *Soriano* v. *United States,* 352 U. S. 270, 276 (1957). Thus, except as Congress has consented to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States* v. *Sherwood,* 312 U. S., at 587–588.

We find no provision in the Classification Act that expressly makes the United States liable for pay lost through allegedly improper classifications. To be sure, in the "purpose" section of the Act, 5 U. S. C. § 5101 (1) (A), Congress stated that it was "to provide a plan for classification of positions whereby . . . the principle of equal pay for substantially equal work will be followed." And in subsequent sections, there are set forth substantive standards for grading particular positions, and provisions for procedures to ensure that those standards are met. But none of these several sections contains an express

provision for an award of backpay to a person who has been erroneously classified.

In answer to this fact, the respondents and the *amici* make two observations. They first argue that the Tucker Act fundamentally waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation, and makes available any and all generally accepted and important forms of redress, including money damages. It is said that the Government has confused two very different issues, namely, whether there has been a waiver of sovereignty, and whether a substantive right has been created, and it is claimed that where there has been a violation of a substantive right, the Tucker Act waives sovereign immunity as to all measures necessary to redress that violation.

The argument does not persuade us. As stated above, the Tucker Act is merely jurisdictional, and grant of a right of action must be made with specificity. The respondents do not rest their claims upon a contract; neither do they seek the return of money paid by them to the Government. It follows that the asserted entitlement to money damages depends upon whether any federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S. S. Corp.* v. *United States,* 178 Ct. Cl., at 607, 372 F. 2d, at 1009; *Mosca* v. *United States,* 189 Ct. Cl. 283, 290, 417 F. 2d 1382, 1386 (1969), cert. denied, 399 U. S. 911 (1970). We are not ready to tamper with these established principles because it might be thought that they should be responsive to a particular conception of enlightened governmental policy. See Brief for *Amici Curiae* 9–11. In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and

we regard as unsound the argument of *amici* that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.

We perceive nothing in the *Regional Rail Reorganization Act Cases,* 419 U. S. 102 (1974), cited by the *amici* with other cases centering in the Just Compensation Clause of the Fifth Amendment ("nor shall private property be taken for public use, without just compensation"), that lends support to the respondents. These Fifth Amendment cases are tied to the language, purpose, and self-executing aspects of that constitutional provision, *Jacobs* v. *United States,* 290 U. S. 13, 16 (1933), and are not authority to the effect that the Tucker Act eliminates from consideration the sovereign immunity of the United States.

The respondents and the *amici* next argue that the violation of any statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages because, if this were not so, the employee would then have a right without a remedy, inasmuch as he is denied access to the one forum where he may seek redress.[5]

Here again we are not persuaded. Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute,

---

[5] The *amici* acknowledge that it is conceivable that the respondents will be able to obtain reclassification for the future through the mandamus action they instituted in 1971. See *Testan* v. *Hampton,* Civ. No. 71–2250 (ED Pa.). That suit apparently lies dormant subject to reactivation. The Government states that ·if respondents proceed with the action, the United States "will not contest the district ·court's jurisdiction to entertain respondents' claim for prospective equitable relief." Reply Brief for United States 17 n. 7.

or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S. S. Corp.* v. *United States,* 178 Ct. Cl., at 607, 372 F. 2d, at 1008, 1009. We see nothing akin to this in the Classification Act or in the context of a suit seeking reclassification.

The present action, of course, is not one concerning a wrongful discharge or a wrongful suspension. In that situation, at least since the Civil Service Act of 1883, the employee is entitled to the emoluments of his position until he has been legally disqualified. *United States* v. *Wickersham,* 201 U. S. 390 (1906). There is no claim here that either respondent has been denied the benefit of the position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it. *United States* v. *McLean,* 95 U. S. 750 (1878); *Ganse* v. *United States,* 180 Ct. Cl. 183, 186, 376 F. 2d 900, 902 (1967). The Classification Act does not purport by its terms to change that rule, and we see no suggestion in it or in its legislative history that Congress intended to alter it.

The case of *Selman* v. *United States,* 204 Ct. Cl. 675, 498 F. 2d 1354 (1974), pressed upon us by the respondents,[6] if correct, is clearly distinguishable. The pay claims there rested flatly upon the mandatory provision contained in 37 U. S. C. § 202 (*l*) to the effect that an officer "serving as Assistant Judge Advocate General of the Navy is entitled to the basic pay of a rear admiral (lower half) or brigadier general, as appropriate."

---

[6] Brief for Respondents 12; Tr. of Oral Arg. 25–28.

Neither the Classification Act nor the Back Pay Act contains any mandatory provision of this kind.

The situation, as we see it, is not that Congress has left the respondents remediless, as they assert, for their allegedly wrongful civil service classification, but that Congress has not made available to a party wrongfully classified the remedy of money damages through retroactive classification. There is a difference between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages, on the other. See *Edelman* v. *Jordan,* 415 U. S. 651 (1974). Respondents, of course, have an administrative avenue of prospective relief available to them under the elaborate and structured provisions of the Classification Act, 5 U. S. C. §§ 5101–5115. The *amici* so recognize. Brief for *Amici Curiae* 13–15. Among the Act's provisions along this line are those requiring the Civil Service Commission to engage in supervisory review of an agency's classifications, and, where necessary, to review and reclassify individual positions, 5 U. S. C. § 5110; allowing the Commission to reclassify, § 5112; and allowing the Commission even to revoke or suspend the agency's authority to classify its own positions, § 5111. Indeed, as the *amici* describe it: "[T]he Act is not merely a hortatory catalogue of high principles." Brief for *Amici Curiae* 15. The built-in avenue of administrative relief is one response to these statutory requirements. Review and reclassification may be brought into play at the request of an employee. 5 U. S. C. § 5112 (b). And respondents, as has been noted, did just that. A second possible avenue of relief—and it, too, seemingly, is only prospective—is by way of mandamus, under 28 U. S. C. § 1361, in a proper federal district court. In this way, also, the respondents have asserted their claims. See n. 5, *supra.*

The respondents, thus, are not entirely without remedy. They are without the remedies in the Court of Claims

of retroactive classification and money damages to which they assert they are entitled. Additional remedies of this kind are for the Congress to provide and not for the courts to construct.

Finally, we note that if the respondents were correct in their claims to retroactive classification and money damages, many of the federal statutes—such as the Back Pay Act—that expressly provide money damages as a remedy against the United States in carefully limited circumstances would be rendered superfluous.

The Court of Claims, in the present case, sought to avoid all this by its remand to the Civil Service Commission for further proceedings. If, then, the Commission were to find that the respondents were entitled to a higher grade, the Court of Claims announced that it would be prepared on appropriate motion to enter an award of money damages for the respondents for whatever backpay they lost during the period of their wrongful classifications. See *Chambers* v. *United States*, 196 Ct. Cl. 186, 451 F. 2d 1045 (1971). The remand statute, Pub. L. 92–415, 86 Stat. 652, now codified as part of 28 U. S. C. § 1491 (1970 ed., Supp. IV), authorizes the Court of Claims to "issue orders directing restoration to . . . position, placement in appropriate duty . . . status, and correction of applicable records" in order to complement the relief afforded by a money judgment, and also to "remand appropriate matters to any administrative . . . body" in a case "within its jurisdiction." The remand statute, thus, applies only to cases already within the court's jurisdiction. The present litigation is not such a case.[7]

---

[7] The committee reports relating to Pub. L. 92–415 expressly confirm the understanding that the remand statute "does not extend the class of cases over which the Court of Claims has jurisdiction." S. Rep. No. 92–1066, p. 1 (1972); H. R. Rep. No. 92–1023, p. 3 (1972).

Respondents cite *Allison* v. *United States,* 196 Ct. Cl. 263, 451 F. 2d 1035 (1971), and *Pettit* v. *United States,* 203 Ct. Cl. 207, 488 F. 2d 1026 (1973), as precedent for the remand order in this case. Those cases found the employees' "entitlement" to money damages in an Executive Order, and to that extent might be distinguishable from the instant case. But cf. *Ogletree* v. *McNamara,* 449 F. 2d 93 (CA6 1971); *Gnotta* v. *United States,* 415 F. 2d 1271 (CA8 1969), cert. denied, 397 U. S. 934 (1970); *Manhattan-Bronx Postal Union* v. *Gronouski,* 121 U. S. App. D. C. 321, 350 F. 2d 451 (1965), cert. denied, 382 U. S. 978 (1966). To the extent, however, that *Allison* and *Pettit* rely on the concept that an admission of misclassification by an agency automatically gives rise to a cause of action for money damages against the United States, their reasoning is identical to the Court of Claims' reasoning in the instant case; and to the extent that analysis is now rejected, the analysis of *Allison* and *Pettit* is necessarily rejected. See also *Chambers* v. *United States, supra.*

C. The Back Pay Act. This statute, which the Court of Claims found unnecessary to evaluate in arriving at its decision, does not apply, in our view, to wrongful-classification claims. The Act does authorize retroactive recovery of wages whenever a federal employee has "undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of" the compensation to which the employee is otherwise entitled. 5 U. S. C. § 5596 (b). The statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, suspensions, and "other unwarranted or unjustified actions affecting pay or allowances [that] could occur in the course of reassignments and change from full-time to part-time work." S. Rep. No. 1062, 89th Cong., 2d

Sess., 3 (1966). The Commission consistently has so construed the Back Pay Act. See 5 CFR § 550.803 (e) (1975). So has the Court of Claims. See *Desmond* v. *United States,* 201 Ct. Cl. 507, 527 (1973).

For many years federal personnel actions were viewed as entirely discretionary and therefore not subject to any judicial review, and in the absence of a statute eliminating that discretion, courts refused to intervene where an employee claimed that he had been wrongfully discharged. Compare *Keim* v. *United States,* 177 U. S. 290, 293–296 (1900), with *United States* v. *Wickersham,* 201 U. S. 390 (1906). See *Sampson* v. *Murray,* 415 U. S. 61, 69–70 (1974). Relief was invariably denied where the claim was that the employee had been denied a promotion on improper grounds. See *Keim* v. *United States,* 177 U. S., at 296; *United States* v. *McLean,* 95 U. S., at 753.

Congress, of course, now has provided specifically in the Lloyd-LaFollette Act, 5 U. S. C. § 7501, for administrative review of a claim of wrongful adverse action, and in the Back Pay Act for the award of money damages for a wrongful deprivation of pay. But federal agencies continue to have discretion in determining most matters relating to the terms and conditions of federal employment. One continuing aspect of this is the rule, mentioned above, that the federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act. It could easily have so provided had that been its intention.[8]

---

[8] In 1972, Congress made Title VII of the Civil Rights Act of 1964 applicable to federal employees. 86 Stat. 103, 42 U. S. C. § 2000e (a)

In support of their contention that the Back Pay Act authorizes a claim in the situation here presented, respondents and *amici* cite only two cases other than the Court of Claims cases whose reasoning is directly in question here. Neither case supports the proposition. *Walker* v. *Kleindienst,* 357 F. Supp. 749 (DC 1973). (cited by respondents), addressed the issue of the retroactivity of the Equal Employment Opportunity Act of 1972. *Ainsworth* v. *United States,* 185 Ct. Cl. 110, 399 F. 2d 176 (1968) (cited by *amici*), involved the rights of an employee who had been discharged and subsequently reinstated.

Neither of these cases provides a reason for doubting that the Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position.

### III

We therefore conclude that neither the Classification Act nor the Back Pay Act creates a substantive right in the respondents to backpay for the period of their claimed wrongful classifications. This makes it unnecessary for us to consider the additional argument advanced by the United States that the Classification Act does not require that positions held by employees of one agency be compared with those of employees in another agency.

The Court of Claims was in error when it remanded the case to the Civil Service Commission for further proceedings. That court's judgment is therefore reversed,

---

(1970 ed., Supp. IV). The nature of that explicit waiver of sovereign immunity is presently before the Court. See *Brown* v. *General Services Administration,* 507 F. 2d 1300 (CA2 1974), cert. granted, 421 U. S. 987 (1975).

and the case is remanded with directions to dismiss the respondents' suit.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.