Cleophas **BRADLEY**, Jr., Rudy Negrete, Jr., Charles Murray, Kenneth M. Franklin, James Alberts, Milton Lobstein, and David Williams, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 95–711 C.

United States Court of Federal Claims.

Nov. 19, 1998.

Sally H. Saltzberg, Chicago, IL, for plaintiffs.

Domenique Kirchner, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and James M. Kinsella, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

Plaintiffs allege that the Federal Protective Service (FPS), a division of the General Services Administration, wrongfully reduced plaintiffs' pay when it retroactively applied the Law Enforcement Availability Pay Act of 1994 (LEAP), Pub.L. 103–329, § 633 (Sept. 30, 1994) (codified, *inter alia*, at 5 U.S.C. §§ 5542(d) & 5545a). This case stands on defendant's motion filed September 25, 1996 to dismiss the case for lack of subject-matter jurisdiction or, alternatively, for summary judgment. We conclude that subject-matter jurisdiction exists but that defendant is entitled to summary judgment on the issue of correct retroactive application of LEAP. Further, we set forth our interpretation of 5 U.S.C. §§ 5542 and 5545a to assist the par-

ties in determining whether there are remaining issues for trial.

# I

Plaintiffs are criminal investigators for the FPS. Criminal investigators work both scheduled and unscheduled overtime. Pl. Mem. (7/29/96) at 4. The unscheduled overtime is known as administratively uncontrollable overtime (AUO). *Id.* This often results in the investigators working long and unusual hours. 140 Cong. Rec. S15266-01 (1994) (Statement of Sen. DeConcini). In addition, they are required to be on call for certain periods each month. Pl. Reply (10/22/96), Bradley Aff., ¶ 6.

Historically, criminal investigators received overtime compensation of one and one-half times their basic hourly rate for both scheduled and unscheduled overtime hours worked, *see* 5 U.S.C. § 5542(a), but received no compensation for the time they were on call, Pl. Reply (10/22/96), Bradley Aff., ¶ 6. Plaintiffs in this case were required to be on call two weeks per month. *Id.* While on call, plaintiffs were required to respond within one hour to any criminal incident regardless of day or time and "could not leave the immediate area or consume alcohol." *Id.*

In 1994, Congress enacted LEAP to establish a uniform system of compensation for the excessive and unusual hours worked by federal criminal investigators. 140 Cong. Rec. § 15266-01 (1994) (Statement of Sen. DeConcini). LEAP provided availability pay for criminal investigators who met eligibility requirements based on an annual minimum average of AUO hours worked. 5 U.S.C. § 5545a(d). This availability pay was, in effect, a 25% increase in the basic pay of each qualifying criminal investigator. Each of the plaintiffs was so qualified.

Availability pay was primarily intended to be in lieu of premium pay for unscheduled overtime hours. 5 U.S.C. § 5545a(c). Despite the suggestion of the designation "availability," it was not solely intended to compensate for on-call time. From the government's perspective, availability pay was designed to gain control over AUO while at the same time recognizing investigators'

proper claim for some compensation for the extensive on-call time required of them. The balance was struck by providing a 25% pay increase (over each qualifying investigator's basic pay, including locality pay) to compensate for (1) all on-call time, (2) all unscheduled overtime, and (3) the first two hours of scheduled overtime during a day in the investigator's regular work-week.

Thus, after enactment of LEAP, the only premium pay for which the criminal investigators were eligible with respect to a regular work-day was for overtime hours (1) scheduled in advance of the work-week and (2) in excess of ten hours of work. 5 U.S.C. § 5542(d). At a recorded status conference conducted on June 6, 1996, there was a consensus that plaintiffs are entitled to availability pay pursuant to 5 U.S.C. § 5545a beginning as of October 30, 1994 (rather than October 1, 1994 as alleged in the complaint). Further, the parties appear to concur that beginning with the pay period commencing on April 28, 1996 and ending on May 11, 1996, availability pay has been paid to plaintiffs on a current basis. *See* Def. Proposed Findings (9/25/96), ¶ 4.

Defendant takes the position that all availability pay accruing from October 30, 1994 through April 27, 1996 (adjusted retroactively, *inter alia*, for inapplicable premium pay) has been remitted to plaintiffs, Def. Proposed Findings (9/25/96), ¶¶ 5 & 6. Plaintiffs, while acknowledging the government's recalculation of compensation and intended retroactive application of availability pay, contend that there was a miscalculation concerning the amount due for the first two hours of scheduled overtime regular work-days.

Plaintiffs were eligible for availability pay as of October 30, 1994, but received none until May 1996 when they received two retroactive installments. Pl. Reply (10/22/96), Bradley Aff., ¶ 3. Plaintiffs assert entitlement to interest on such delayed payments of availability pay.

# II

We first address the issue of subject-matter jurisdiction. There is no doubt that plaintiffs' claims are claims against the gov-

ernment for monetary relief brought under a money mandating statute, i.e., LEAP. Thus, jurisdiction in this court is established under the Tucker Act, 28 U.S.C. § 1491(a)(1). *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Defendant contends that jurisdiction is preempted by statute. Def. Br. (9/25/96) at 10. Defendant relies on the language of 5 U.S.C. § 5545a(e)(2) which provides: "Involuntary reduction in pay resulting from a denial of certification ... shall be a reduction in pay for purposes of section 7512(4) of this title." 5 U.S.C. § 5545a (e)(2).

Defendant argues that the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (1978), granted the Merit Systems Protection Board (MSPB) responsibility for adjudicating employees' appeals from adverse personnel actions, with further appellate review available at the Federal Circuit. 5 U.S.C. § 7513(d). Adverse personnel actions, as defined by the CSRA, include "a reduction in pay." 5 U.S.C. § 7512. Thus, defendant contends, the MSPB has exclusive jurisdiction under *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), over plaintiffs' claims.

While defendant's statement of the law is correct, it is misapplied to the facts of this case. Plaintiffs did not suffer a reduction in pay as a result of a denial of certification. The government has never denied plaintiffs' entitlement to availability pay. Defendant has stated that procedures were underway to arrange availability pay for plaintiffs before the defendant even knew of plaintiffs' complaint. Def. Mot. (2/16/96) at 3. "There is no dispute that plaintiffs have never lost their certification status, nor have they alleged a denial of certification of availability pay." Pl. Reply (10/22/96) at 2. Thus, plaintiffs' claims are appropriately classified as ones for withholding pay as a result of a miscalculation on the part of the government, rather than as claims based on denial of classification.

In *Chaney v. Veterans Administration,* 906 F.2d 697 (Fed.Cir.1990), the Federal Circuit held that the MSPB lacked jurisdiction over a claim concerning the calculation of a pay raise. *Id.* at 698. The plaintiff in that case became eligible for pay raises but claimed that the raises were not calculated properly under the law. *Id.* The court held that MSPB jurisdiction arises only when "an ascertainable lowering, at the time of the personnel action, of an employee's present or future pay occurs." *Id.* at 698 (citing *Garbacz v. United States,* 228 Ct.Cl. 309, 656 F.2d 628 (1981)).

As in *Chaney,* the plaintiffs in this case seek retroactive payments based on an alleged miscalculation or misconstruction of applicable legislation. The reduction in pay which plaintiffs allege is not an adverse personnel action as contemplated in the CSRA. Plaintiffs' claims are merely for unpaid salary for time actually worked.

Defendant argues that jurisdiction is determined by the facts as they were at the time of the complaint. Def. Reply (11/18/96) at 4 n. 3. However, at the time of the complaint, plaintiffs were not seeking certification. They were not seeking a correction of an unjustified or unwarranted personnel action. No injunctive or declaratory relief was being sought. Plaintiffs were seeking compensation to which the government acknowledged plaintiffs were entitled. Both the statutes and case law lead us to conclude that we have subject-matter jurisdiction over plaintiffs' claims.

### III

■ Upon examination of 5 U.S.C. §§ 5542 and 5545a, we conclude that defendant has interpreted and applied the statutes consistent with their plain meaning. Based on the plain meaning of these statutes and their legislative history, we further conclude (1) that plaintiffs are not entitled to overtime pay for their first two hours of scheduled overtime worked on a regular workday and (2) that the government, when compensating plaintiffs retroactively for availability pay, appropriately made set-offs for previously awarded compensation (including premium pay) related to such first-two-hour periods of scheduled overtime.

Availability pay was intended, *inter alia,* to replace AUO pay. 5 U.S.C. § 5545a(c).

Each criminal investigator shall be paid availability pay as provided under this section [i.e., 5 U.S.C. § 5545a]. Availability pay shall be paid to ensure the availability of the investigator for unscheduled duty.... Availability pay provided to a criminal investigator for such unscheduled duty shall be paid instead of premium pay provided by ... [5 U.S.C. § 5542(a)], except premium pay for regularly scheduled overtime work as provided under [5 U.S.C.] section 5542, night duty, Sunday duty, and holiday duty.

*Id.* During the regular work-week, the only overtime pay criminal investigators are entitled to accrue is for regularly scheduled overtime for work in excess of ten hours per day on a regular work-day. 5 U.S.C. § 5542(d)(1)(a).

Plaintiffs allege that they were required to work an additional four hours each day following the Oklahoma City bombing. Pl. Reply (10/22/96), Bradley Aff., ¶ 5. Pursuant to LEAP, such overtime was regularly scheduled overtime, the first two hours of which (on a regular work-day) were compensated by availability pay and the second two hours of which were covered by premium pay under 5 U.S.C. § 5542(a). 5 U.S.C. §§ 5542(d)(1)(A) & 5545a(c).

Title 5 U.S.C. § 5542(d), added by LEAP, provides, in very clear language, that for one receiving availability pay, there shall be no additional compensation for the first two hours of scheduled overtime on a regular workday:

In applying subsection (a) of this section [providing premium pay for overtime] with respect to any criminal investigator who is paid availability pay under [5 U.S.C.] section 5545a—

(1) such investigator shall be compensated under such subsection (a), at the rates there provided, for overtime work which is scheduled in advance of the administrative workweek—

(A) in excess of 10 hours on a day during such investigator's basic 40 hour workweek; or

(B) on a day outside such investigator's basic 40 hour workweek; and

(2) such investigator shall be compensated for all other overtime work under section 5545a [providing for availability pay].

5 U.S.C. § 5542(d).

The effect of this LEAP provision on computation of regularly scheduled overtime is that each criminal investigators receiving availability pay may be required to work two extra hours during each regular work-day (up to ten extra hours a week) without additional compensation. Congress intended this result in partial exchange for the criminal investigator receiving a guaranteed 25% pay increase. 140 Cong. Rec. § 15266–01 (1994) (Statement of Sen. DeConcini). Congress foresaw the guarantee of a 25% salary increase for all eligible criminal investigators and uniform application of additional compensation as the best way to maximize cost savings and investigative efforts in the field. *Id.*

We recognize that Congress' intent could, and for plaintiffs did, have an adverse effect depending upon the number of overtime hours worked each day. Plaintiffs were required to work four extra hours every regular work-day (20 extra hours each regular work-week) from April 1995 until October 1995. They originally received compensation for each of the additional 20 hours of scheduled overtime during each work-week at the premium pay rate of time and one-half the basic pay for grade GS–10 pursuant to 5 U.S.C. § 5542(a).

When LEAP was retroactively applied, and the provisions of new 5 U.S.C. 5542(d) taken into consideration, earlier payments for ten hours of each week (the first two hours of extra work each day) at time and one-half rates were deducted from plaintiffs' pay; availability pay compensated for these hours at straight time rates (25% pay increase based on a 40–hour work-week). Consequently, upon retroactive application of availability pay, plaintiffs were indebted to the government for the weeks in which they were compensated for ten or more overtime hours during the regular work-week.

We conclude from both the language of the statutes and the legislative history that the government appropriately made set-offs of

scheduled overtime hours worked by the plaintiffs when it compensated the plaintiffs retroactively for availability pay owed to them.

## IV

As noted in Part I above, plaintiffs accrued availability pay from October 30, 1994 to April 27, 1996, but payment of such accrued amounts was not made until May 1996. Plaintiffs claim interest from the various dates of accrual of the principal of such availability pay to the date of payment.

■ The general rule is that a successful plaintiff may not obtain interest on a claim against the United States unless Congress has expressly waived its sovereign immunity on interest by contract or statute. *Library of Congress v. Shaw*, 478 U.S. 310, 317, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute.") *See generally* 28 U.S.C. §§ 1961 & 2516, 41 U.S.C. § 611.

Plaintiffs allege no contractual arrangement providing for interest on their statutory claims. Further, they have made no showing of any statute expressly providing for interest on the claims asserted in this litigation.

■ Plaintiffs argue that they are entitled to interest pursuant to the Back Pay Act, 5 U.S.C. § 5596. The Back Pay Act provides for the award of interest and attorneys' fees in addition to the amount the employee would have earned had an unjustified personnel action never been in effect. 5 U.S.C. § 5596(b)(1) & (2); *Brown v. Secretary of the Army*, 918 F.2d 214 (D.C.Cir.1990), *cert. denied*, 502 U.S. 810, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991). To be eligible to receive compensation under the Back Pay Act, an employee must "have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." 5 U.S.C. § 5596(b)(1).

In Part II above regarding this court's subject-matter jurisdiction, we explain that plaintiffs are seeking relief from government action which is not the type of reduction of pay contemplated in the Civil Service Reform Act. Similarly, the reduction in pay which plaintiffs allege is not an unjustified personnel action as contemplated in the Back Pay Act. The Back Pay Act was intended "to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." *United States v. Testan*, 424 U.S. 392, 407, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In contrast, plaintiffs are seeking retroactive payments based on an alleged miscalculation or misconstruction of LEAP.

Because plaintiffs' claims are not based on alleged unjustified or unwarranted personnel actions contemplated in the Back Pay Act, that Act furnishes no basis for their claims of interest.

We conclude that plaintiffs are not entitled to interest on the principal amounts of availability pay which accrued from October 30, 1994 to April 27, 1996 but remained unpaid until May 1996.

## V

Based on the foregoing, it is ORDERED as follows:

1. To the extent that defendant's motion filed September 25, 1996 seeks dismissal for lack of subject-matter jurisdiction, the motion is DENIED.

2. To the extent defendant's said motion alternatively seeks summary judgment concerning the proper retroactive application of LEAP, the motion is GRANTED. (The effect of this ruling is a declaration that, in general terms, defendant's intended application of LEAP to plaintiffs' compensation was proper. There may remain factual disputes concerning the accuracy of defendant's calculation with respect to an individual plaintiff.)

3. To the extent that plaintiffs claim entitlement to interest on delayed payments of availability pay, such claims for interest are DENIED.

4. The parties shall file a joint status report by Friday, December 18, 1998, concerning the precise issues, if any, which remain for trial and a suggested procedure for addressing any such issues.