John CROWLEY, Plaintiff,

v.

UNITED STATES, Defendant.

No. 94–711C.

United States Court of Federal Claims.

Aug. 19, 2003.

Irving Kator, Kator, Parks, & Weiser, P.L.L.C., Washington, D.C., for the plaintiff. Cathy A. Harris, Kator, Parks & Weiser, P.L.L.C, Washington, D.C., of counsel.

Scott D. Austin, Trial Attorney; James M. Kinsella, Deputy Director, David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice; and Robert D. McCallum, Jr., Assistant Attorney General, Washington, D.C., for the defendant. James E. Hicks, Office of Chief Counsel, Drug Enforcement Administration; and Heide L. Herrman, Trial Attorney, Commercial Litigation Branch, Department of Justice, of counsel.

## OPINION

HORN, Judge.

On August 30, 2002, this court issued an opinion finding that John Crowley was entitled to Law Enforcement Officer (LEO) status and locality pay benefits under section 404 of the Federal Law Enforcement Pay Reform Act (FLEPRA) while serving in the

Drug Enforcement Agency (DEA) from October 1, 1991 through April 1, 2001. *Crowley v. United States,* 53 Fed.Cl. 737, 792 (2002). Plaintiff now claims he is entitled to interest on the FLEPRA back pay damages awarded by the court, and cites the Back Pay Act, 5 U.S.C. § 5596(b) (2000), as a waiver of sovereign immunity allowing recovery of interest on his claim.

## FINDINGS OF FACT

The court provided a detailed discussion of the facts in its earlier opinion, *Crowley v. United States,* 53 Fed.Cl. 737, which are incorporated herein. For a more detailed discussion of the facts, the parties are referred to the earlier opinion. In 1990, Congress established a retirement and pay benefit system for federal law enforcement officers, making them eligible for enhanced pay and early retirement pursuant to the Federal Law Enforcement Pay Reform Act of 1990, Pub.L. No. 101–509, §§ 401–407, 104 Stat. 1389, 1465–69. The regulations that set forth the standards for qualifying as an LEO are found at 5 C.F.R. §§ 831.903–831.911 (2000) and identify two methods for claiming LEO credit: (1) by agency determination that a position qualifies for LEO credit, or (2) by filing a claim for LEO credit with the relevant agency personnel office, in this case, the Justice Management Division (JMD) of the Department of Justice. *See* 5 C.F.R. §§ 831.903(a), 831.904(a), 831.906(b). LEO status entitles the claimant to FLEPRA benefits, including premium pay for LEOs working in selected cities. *See* 5 U.S.C. § 5305 note (FLEPRA § 404).

After his claim for LEO credit was rejected by the JMD, Mr. Crowley along with 274 other Diversion Investigators whose actions were all consolidated originally under *Hannon v. United States,* Case No. 91–1334C, *et al.,* and now under *Colosimo v. United States,* Case No. 91–1334C, *et al.,* filed suit in this court seeking LEO credit and the associated FLEPRA benefits. Mr. Crowley sought benefits under sections 403 and 404, for his work with the DEA as a Diversion Investigator from October 1, 1991 through October 1, 2001. Plaintiff also requested overtime pay under 5 U.S.C. § 5542 (2000), Administratively Uncontrollable Overtime (AUO) pay, pursuant to 5 U.S.C. § 5545(c)(2) and availability pay under 5 U.S.C. § 5545(a). After a trial held in Boston, Massachusetts and Washington, D.C., this court denied plaintiff's claims for overtime pay, AUO, availability pay, and special pay rates under FLEPRA section 403. The court, however, found that plaintiff qualified for LEO credit from October 1, 1991 through April 1, 2001, which entitled him to premium pay under FLEPRA section 404. *See Crowley v. United States,* 53 Fed.Cl. at 792. In order to determine Mr. Crowley's qualifications for LEO credit, the court addressed four periods of plaintiff's employment that allegedly entitled him to such credit. The court examined Mr. Crowley's role as a Diversion Investigator in Boston, Massachusetts from 1973 through 1986; as a Diversion Group Supervisor from 1986 through 1991; as a Staff Coordinator in the Office of Diversion at DEA headquarters in Arlington, Virginia from 1991 through 1994; and as a Diversion Group Supervisor in Boston, Massachusetts from 1994 through 2001. On April 18, 2003, this court denied defendant's motion for reconsideration of its August 30, 2002 decision.

Regarding the FLEPRA locality pay damages awarded to plaintiff in *Crowley v. United States,* 53 Fed.Cl. 737, plaintiff argues that "the damages awarded by the Court constitute back pay for the correction of an unjustified or unwarranted personnel action and, accordingly, he is entitled to interest on that award under the Back Pay Act, 5 U.S.C. § 5596(b)(2) (2000)." Defendant maintains that plaintiff is not entitled to interest under the Back Pay Act because the 1978 amendment to the Act "made clear that the Act does *not* apply to reclassification actions, such as the action brought by Mr. Crowley before this Court which formed the basis for his award of premium pay." (emphasis in original). In the alternative, defendant contends that Mr. Crowley has not been affected by an unjustified or unwarranted personnel action that resulted in the reduction or withdrawal of his pay, which, according to the defendant, is required for compensation under the Back Pay Act.

## DISCUSSION

In the opinion issued in this case on August 30, 2002, this court found that plaintiff is entitled to FLEPRA section 404 benefits for positions held between January 1, 1992 and April 1, 2001. FLEPRA section 404(b)(1) states in relevant part:

Except as provided in subsection (a), effective on the first day of the first applicable pay period beginning on or after January 1, 1992, each law enforcement officer whose post of duty is in one of the following areas shall receive an adjustment, which shall be a percentage of the officer's rate of basic pay, as follows:

Boston–Lawrence–Salem, MA–NH Consolidated Metropolitan Statistical Area ... 16%

\*   \*   \*   \*   \*   \*

Washington–Baltimore DC–MD–VA–WV Consolidated Metropolitan Statistical Area ... 4%

5 U.S.C. § 5305 note. The court found that Mr. Crowley is entitled to locality pay under FLEPRA section 404 at a rate of four percent from the first applicable pay period following January 1, 1992 to October 30, 1994, while plaintiff worked in Arlington, Virginia, and at a rate of sixteen percent from October 31, 1994 to April 1, 2001, while he worked in Boston, Massachusetts. Here, this court addresses plaintiff's claim that, under the Back Pay Act, 5 U.S.C. § 5596(b), plaintiff also is entitled to interest on the back pay owed to him for FLEPRA locality pay during the above mentioned periods.

With regard to a claim for interest against the United States, the longstanding rule has been that the sovereign is not liable for interest on a damage award unless consent to pay has been made explicit by a waiver of sovereign immunity in an act of the legislature or in a lawful contract of its executive officers. *Library of Cong. v. Shaw*, 478 U.S. 310, 314–15, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951); *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659, 67 S.Ct. 601, 91 L.Ed. 577 (1947); *United States v. North Carolina*, 136 U.S. 211, 216, 10 S.Ct. 920, 34 L.Ed. 336 (1890); *United States v. Bayard*, 127 U.S. 251, 260, 8 S.Ct. 1156, 32 L.Ed. 159 (1888); *Tillson v. United States*, 100 U.S. (10 Otto) 43, 47, 25 L.Ed. 543 (1879); *see also United States v. N. Am. Transp. & Trading Co.*, 253 U.S. 330, 336, 40 S.Ct. 518, 64 L.Ed. 935 (1920); *Clary v. United States*, 333 F.3d 1345, 1351–52 (Fed.Cir.2003); *United States Shoe Corp. v. United States*, 296 F.3d 1378, 1381 (Fed.Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 2214, 155 L.Ed.2d 1105 (2003); *Hartog Foods Int'l v. United States*, 291 F.3d 789, 791 (Fed.Cir. 2002); *IBM v. United States*, 201 F.3d 1367, 1370 (Fed.Cir.2000), *cert. denied*, 531 U.S. 1183, 121 S.Ct. 1167, 148 L.Ed.2d 1025 (2001); *Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986); *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir. 1983), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). Courts must strictly construe waivers of sovereign immunity in favor of the government. *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *Library of Cong. v. Shaw*, 478 U.S. at 318, 106 S.Ct. 2957; *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951) *reh'g denied*, 342 U.S. 899, 72 S.Ct. 228, 96 L.Ed. 673 (1951); *Hartog Foods Int'l v. United States*, 291 F.3d at 791. Moreover, "[c]ongressional consent must be unambiguous." *IBM v. United States*, 201 F.3d at 1370. As stated by the United States Supreme Court:

Thus, there can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*United States v. N.Y. Rayon Importing Co.*, 329 U.S. at 659, 67 S.Ct. 601 (citations omitted).

The Supreme Court succinctly summarized the historical background of the no-interest

rule, requiring a separate waiver of sovereign immunity for interest, as follows:

> In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim. Because interest was generally presumed not to be within the contemplation of the parties, common-law courts in England allowed interest by way of damages only when founded upon agreement of the parties. In turn, the agreement-basis of interest was adopted by American courts. Gradually, in suits between private parties, the necessity of an agreement faded. The agreement requirement assumed special force when applied to claims for interest against the United States. As sovereign, the United States, in the absence of its consent, is immune from suit. This basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress.

*Library of Cong. v. Shaw*, 478 U.S. at 314–15, 106 S.Ct. 2957 (citations omitted).

Plaintiff alleges that the Back Pay Act, 5 U.S.C. § 5596, is a waiver of sovereign immunity that allows him to collect interest on his FLEPRA back pay damages. The Back Pay Act provides that interest on back pay is allowable to:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee ....

5 U.S.C. § 5596(b)(1); *see also* 5 U.S.C. § 5596(b)(2)(A). The Back Pay Act also states: "This subsection does not apply to any reclassification action ...." 5 U.S.C. § 5596(b)(3).

■ Defendant maintains that the Back Pay Act does not apply to plaintiff's FLEPRA claims, and that plaintiff has cited no statute sufficient to warrant a waiver of sovereign immunity for interest on Mr. Crowley's damage awards. Citing *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), defendant first argues that the Back Pay Act does not apply to plaintiff's FLEPRA back pay award because the claim is actually a "reclassification action." In *Testan*, the plaintiffs were government trial attorneys who sought reclassification as GS–14s and appropriate back pay under the Back Pay Act because their duties were identical to those of other trial attorneys who were classified at a higher grade. *United States v. Testan*, 424 U.S. at 393, 394, 96 S.Ct. 948. In finding that the plaintiffs were not entitled to compensation under the Back Pay Act, the Supreme Court stated: "The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." *Id.* at 402, 96 S.Ct. 948. The Court also stated: "This statute [the Back Pay Act] ... does not apply, in our view, to wrongful-classification claims." *Id.* at 405, 96 S.Ct. 948. Defendant asserts that plaintiff's claim in this case is "nearly identical" to the *Testan* claim because plaintiff in this case "was never appointed to a position that was classified as an LEO position." Therefore, according to defendant, plaintiff's claim for LEO credit and FLEPRA benefits is one for "reclassification" and does not fall under the Back Pay Act.

In the instant case, plaintiff did not seek reclassification to a higher grade, as did the plaintiffs in *Testan*, but only sought the pay to which his duly appointed position entitled him. In his amended complaint, plaintiff asserted, "Defendant's failure to provide plaintiffs the compensation provided under the FLEPRA ... violates the mandatory provisions of the FLEPRA." Thus, plaintiff sought this court's enforcement of his statutory right to premium pay benefits under FLEPRA for specific positions held at the

DEA between 1991 and 2001. Mr. Crowley's claim is not properly described as one for "reclassification," and plaintiff is not precluded from recovery of interest on his damage award by the language in *United States v. Testan.*

■ As its second argument, defendant contends that the Back Pay Act does not apply to plaintiff's damage award because plaintiff has not been affected by an unwarranted personnel action that resulted in the reduction or withdrawal of his pay within the meaning of the Back Pay Act. *See* 5 U.S.C. § 5596(b)(1). The Back Pay Act allows federal agency employees who "have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction" of compensation to collect back pay with interest for the compensation to which they would have otherwise been entitled. *See* 5 U.S.C. § 5596(b)(1)-(b)(2)(A). In a 1978 amendment to the Back Pay Act, Congress codified the *Testan* rule prohibiting collection of back pay for reclassification actions and expanded the definition of "personnel action" to include "the omission or failure to take an action or confer a benefit." Pub.L. No. 95–454, ¶ 702, *codified at* 5 U.S.C. § 5596(b)(4); S. Rep. 95–969, at 114. With the 1978 amendment, however, the Act was unclear as to whether the inclusion of the "failure ... to confer a benefit" language was intended to broaden the range of actions compensable under the Act beyond "withdrawal or reduction" in compensation; or whether the Act allows recovery for personnel actions only when the employee has experienced actual "withdrawal or reduction" in pay, thereby overriding the language allowing compensation for "failure ... to confer a benefit." *See Brown v. Sec'y of Army,* 918 F.2d 214, 220 (D.C.Cir.1990); *cert. denied sub nom. Brown v. Stone,* 502 U.S. 810, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991). Noting that "[t]he amendment's clarification of the term 'personnel action' to include 'failure ... to confer a benefit' left untouched the condition that the employee suffer a 'withdrawal' of or 'reduction' in compensation," Circuit Judge, now Supreme Court Justice Ginsburg resolved the question in *Brown v. Sec'y of Army* as follows:

[W]e comprehend the 1978 Back Pay Act definitional amendment to mean that if an upgrade is mandatory once specified conditions are met, the Act now affords a retrospective remedy. If an upgrade is not of that virtually automatic, noncompetitive kind, the Act affords no relief. Only in the former case will the employee be treated as one already "duly appointed" to the higher position, so that the failure to confer the benefit constitutes a "withdrawal or reduction" in compensation.

*Brown v. Sec'y of Army,* 918 F.2d at 219–20. The United States Court of Appeals for the Federal Circuit earlier had interpreted personnel actions compensable under the Back Pay Act as follows:

[T]he 1978 amendment was *not* designed to provide payment for all actions which should or might well have been taken, but only for those payments or benefits which were *required* by law (a statute or regulation). The history of the change emphasizes this limited purpose. Previously, the Back Pay Act literally permitted recovery only when the employee incurred "a withdrawal or reduction" in pay, 5 U.S.C. § 5596(b) (1976)—thus omitting in words to blanket failures to make *additional* payments that were mandated by law, *e.g.,* a statutory periodic increase or a benefit conferred by a non-discretionary administrative regulation. For some years, the General Accounting Office authorized such payment for non-discretionary benefits, and in 1977 the Civil Service Commission adopted regulations along the same line. The 1978 amendment to the Back Pay Act was specifically intended to incorporate that general administrative position into the Act—and no more.

*Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984) (emphasis in original) (citations omitted). Thus, a determination of whether the Back Pay Act entities Mr. Crowley to interest on his FLEPRA award turns on the nature of the award—whether or not the FLEPRA award is for a non-discretionary upgrade of the "virtually automatic, noncompetitive kind" that is "mandatory once specific conditions are met." *See Brown v.*

*Sec'y of Army,* 918 F.2d at 220;[1] *Spagnola v. Stockman,* 732 F.2d at 912.

The plain language and legislative history of FLEPRA indicate that the nature of FLEPRA's benefits do not take the form of discretionary upgrades or reclassifications. Section 404 of FLEPRA, titled "Special pay adjustments for law enforcement officers in selected cities," states that "each law enforcement officer whose post of duty is in one of the following areas shall receive an adjustment . . . ." 5 U.S.C. § 5305 note (FLEPRA § 404(b)(1)). Further, a 1990 House Conference Report discussing FLEPRA states:

> The Conferees have included a separate Title in pay reform section of the Act which is intended to provide immediate relief to the Federal law enforcement agencies who are facing severe recruitment and retention problems. These problems have been directly attributed to the large discrepancies which exist in the area of pay and benefits between the Federal law enforcement officers and their state and local enforcement counterparts.
>
> \*      \*      \*      \*      \*      \*
>
> The following elements will close the gap which has developed over the past ten years between Federal Agents/Officers and State/Local Law Enforcement Officers:
>
> \*      \*      \*      \*      \*      \*

1. The Court of Appeals for the District of Columbia Circuit stated:

   In sum, the Back Pay Act, as currently framed, contains clauses tugging in opposite directions. We have adopted a reading that, if less than fully satisfying, is consistent with the Supreme Court's instruction that federal sovereign immunity waivers must be unambiguously expressed, and construed strictly in favor of the sovereign. *See Library of Congress v. Shaw,* 478 U.S. at 318, 106 S.Ct. 2957 . . . .

   *Brown v. Sec'y of Army,* 918 F.2d at 221.

2. "Law enforcement officer" is defined in 5 U.S.C. § 8331(20) (2000), which states, "[L]aw enforcement officer' means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative posi-

LOCALITY PAY ADJUSTMENT

\*      \*      \*      \*      \*      \*

The locality adjustment is considered part of base pay for the computation of overtime, life insurance and retirement benefits and are [sic] subject to bi-weekly pay limitations.

H.R. Conf. Rep. No. 101–906, at 90–91 (1990).

Thus, the plain language and legislative history of FLEPRA indicate that the locality pay benefit is a "special pay adjustment" to be considered part of "base pay." *See* 5 U.S.C. § 5305 note (FLEPRA § 404); H.R. Conf. Rep. No. 101–906, at 91 (1990). The characterization of the benefit as part of "base pay" combined with the congressional goal of closing the pay gap between state/local and federal law enforcement officers suggests that the benefits flowing from the statute were not meant to be discretionary, but are conferred upon LEOs working in selected cities as a matter of law. Similarly, if a federal employee's duties fell within the legal definition of an LEO,[2] then that employee is entitled to LEO credit as a matter of law. *See* 5 U.S.C. § 8331(20); 5 C.F.R. §§ 831.902. Thus, after this court determined Mr. Crowley's position at the DEA qualified him for LEO credit, plaintiff's claim for FLEPRA benefits was essentially a claim for enforcement of a statutory right to base pay for a position at the DEA to which he had been duly appointed.[3]

tion." A definition is also found in 5 C.F.R. § 831.902 (2001), which states:

   Law enforcement officer means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position. (See 5 U.S.C. 8331(20).) The definition does not include an employee whose primary duties involve maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than persons who are suspected or convicted of offenses against the criminal law of the United States.

3. Defendant also cites to *Bradley v. United States,* 42 Fed.Cl. 333 (1998), in support of its argument that the government's denial of FLEPRA benefits to plaintiff was not a "withdrawal or reduction" in pay as required for compensation under the Back Pay Act. *See* 5 U.S.C. § 5596(b). The *Brad-*

**382**

In its earlier opinion, this court determined that the decision to deny plaintiff LEO credit was arbitrary, capricious, and not in accordance with the law, and that Mr. Crowley's job duties entitled him to LEO credit and FLEPRA premium pay for positions held between January 1, 1992 and April 1, 2001. *Crowley v. United States*, 53 Fed.Cl. 737. Under the Back Pay Act, plaintiff is entitled to interest on his damage award if an "appropriate authority"[4] determines that, based on "applicable law, rule, regulation, or collective bargaining agreement," plaintiff has "been affected by an unjustified or unwarranted personnel action" resulting in a "withdrawal or reduction" in pay. *See* 5 U.S.C. § 5596(b)(1). Case law has clarified the statutory definition of actions compensable under the Act as those that involve "non-discretionary" benefits of the "virtually automatic" and "noncompetitive" kind. *See Brown v. Sec'y of Army*, 918 F.2d at 220; *Spagnola v. Stockman*, 732 F.2d at 912. After determining plaintiff was qualified for LEO credit, this court's award of FLEPRA back pay to plaintiff was non-discretionary, required by applicable law, and did not con-stitute discretionary "reclassification." Therefore, plaintiff is entitled to interest on his FLEPRA damage award under the Back Pay Act. *See Brown v. Sec'y of Army*, 918 F.2d at 220; *Spagnola v. Stockman*, 732 F.2d at 912.

## CONCLUSION

Under the Back Pay Act, 5 U.S.C. § 5596, plaintiff is entitled to interest on FLEPRA section 404 locality pay damages that were awarded to him by this court in *Crowley v. United States*, 53 Fed.Cl. 737. Pursuant to this court's August 30, 2002 opinion and as stipulated to by the parties, Mr. Crowley is entitled to $36,530.00 in damages, plus interest. The clerk's office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

ley plaintiffs were criminal investigators who qualified for availability pay under the Law Enforcement Availability Pay Act of 1994 (LEAP), Pub.L. 103–329, § 633. Plaintiffs in *Bradley* sought interest under the Back Pay Act for delayed payment of the availability pay to which the government had already acknowledged plaintiffs were entitled. *Bradley v. United States*, 42 Fed.Cl. at 335. The *Bradley* court described plaintiffs' claims as follows: "They were not seeking a correction of an unjustified or unwarranted personnel action. No injunctive or declaratory relief was being sought. Plaintiffs were seeking compensation to which the government acknowledged plaintiffs were entitled." *Id.* at 336. Unlike in the instant case, the *Bradley* plaintiffs were denied interest under the Back Pay Act because, as the court concluded, their claims were not based on an "unjustified or unwarranted personnel action" under the Back Pay Act, but, rather, were claims for "retroactive payments based on an alleged miscalculation or misconstruction of LEAP." *Id.* at 338. In this case, however, Mr. Crowley seeks enforcement of his statutory right to FLEPRA benefits, a right that the government previously had denied him.

4. The Office of Personnel Management regulations state: "Appropriate authority means an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action, including (a) a court . . . ." 5 C.F.R. § 550.803 (2003). Further, in *Hannon v. United States*, 48 Fed.Cl. 15 (2000), a case related to this case, the court determined the United States Court of Federal Claims had authority over the case and denied a motion to dismiss for lack of subject matter jurisdiction, holding that this court had jurisdiction to hear plaintiff's claim for LEO credit and the associated FLEPRA benefits. *Hannon v. United States*, 48 Fed.Cl. at 29.